Scott A. Kamber (*pro hac vice*)
skamber@kamberlaw.com
David A. Stampley (*pro hac vice*)
dstampley@kamberlaw.com
**KAMBERLAW, LLC**
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile:  (212) 202-6364

Deborah Kravitz (SBN 275661)
dkravitz@kamberlaw.com
**KAMBERLAW LLP**
141 North Street
Healdsburg, CA 95448
Telephone: (707) 820-4247
Facsimile:  (212) 920-3081

Counsel for Plaintiffs (additional counsel on signature page)

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN B. KIM, *et al.*,<br><br>             Plaintiffs,<br><br>v.<br><br>SPACE PENCIL, INC.<br>D/B/A KISSMETRICS, *et al.*<br><br>             Defendants. | CASE NO. 3:11-cv-03796-LB<br><br>**JURY DEMAND**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1. Trespass to Personal Property/Chattel;<br><br>2. Computer Crime Law, Cal. Penal Code § 502;<br><br>3. Computer Fraud and Abuse Act, 18 U.S.C. § 2710<br><br>4. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200<br><br>5. Right to Privacy, Cal. Const. Art. I, § 1;<br><br>6. Negligence |

Plaintiffs, on behalf of themselves and all others similarly situated (each, a "Class Member" and, collectively, the "Class") allege as follows based on personal knowledge and on information and belief based on investigation of counsel.

1

**PARTIES**

2      1.      Plaintiffs are individuals residing in the United States who, during the Class Peri-

3  od (as defined herein), used their computers to visit Defendants' websites, where Defendants

4  downloaded surreptitious code to Plaintiffs' computers to override Plaintiffs' privacy controls

5  and harvest their personal information.

6      2.      Plaintiff John B. Kim is a resident of San Diego, California. .

7      3.      Plaintiff Dan C. Schutzman is a resident of Los Angeles County, California.

8      4.      Defendant Involver, Inc., ("Involver") is a Delaware Corporation with its princi-

9  pal place of business located at 611 Mission Street, San Francisco, California. Defendant oper-

10  ates the website http://involver.com.

11      5.      Defendant 8tracks Inc. ("8tracks") is a Delaware corporation with its principal

12  place of business located at 192 Orchard Street, New York, New York. Defendant 8tracks oper-

13  ates the website http://8tracks.com.

14      6.      Defendant Kongregate Inc. ("Kongregate") is a Delaware corporation with its

15  principal place of business located at 625 Westport Parkway, Grapevine, Texas. Defendant Kon-

16  gregate operates the website http://kongregate.com.

17      7.      Defendant Slideshare, Inc. ("Slideshare") is a Delaware corporation with its prin-

18  cipal place of business located at 490 2nd Street, San Francisco, California. Defendant Slideshare

19  operates the website http://slideshare.net.

20      8.      Defendant Spokeo, Inc. ("Spokeo") is a Delaware corporation with its principal

21  place of business in Pasadena, California. Defendant Spokeo operates the website

22  http://spokeo.com.

23      9.      Defendant Spotify USA, Inc. ("Spotify") is a Delaware corporation with its prin-

24  cipal place of business in New York, New York. Defendant Spotify operates the website

25  http://spotify.com.

26      10.     Defendant Tangient, LLC ("Tangient") is a California corporation with its princi-

27  pal place of business in San Francisco, California. Defendant Tangient operates the website

28  http://wikispaces.com.

---

Second Amended
Class Action Complaint

2

No. 3:11-cv-03796-EDL

11.     Defendant Etsy Inc. ("Etsy") is a Delaware corporation with its principal place of business located in New York, New York. Defendant Etsy operates the website http://www.etsy.com.

12.     Defendant iVillage, LLC, identified as iVilliage in the above caption ("iVillage"), is a corporation with its principal place of business in New York, New York. Defendant iVillage is part of the NBC Universal Women & Lifestyle Entertainment Networks Group. Defendant iVillage operates the website http://astrology.com.

13.     Defendant NBCUniversal, LLC ("NBCU") is a Delaware corporation with its principal place of business in New York, New York. Defendant NBCU is the parent of Defendant iVillage.

14.     Defendants Involver, 8tracks, Kongregate, Spokeo, Spotify, Tangient, Etsy, and iVillage are collectively referred to as the "Website Defendants."

15.     Defendant Space Pencil, Inc., d/b/a KISSmetrics ("Space Pencil" or "Kissmetrics") is a Delaware corporation with principal executive offices and headquarters located at 407 Morning Lane, Redwood Shores, California 94065.

16.     The Website Defendants and Kissmetrics are referred to herein as "Defendants."

## JURISDICTION AND VENUE

17.     This Court has diversity jurisdiction in this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This complaint states claims on behalf of a national class of consumers who are minimally diverse from Defendants. The Class (as defined herein) consists of more than one hundred members. In addition, the amount in controversy exceeds $5 million, exclusive of interest and costs.

18.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 as this action arises in part under federal statutes, specifically, the Computer Fraud and Abuse Act.

19.     This Court has supplemental jurisdiction with respect to the pendent state law claims under 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Defendants because some of the acts alleged herein were committed in the state of California and because Defendant Space Pencil is

1   registered to do business in this state and Defendants systematically and continuously conduct

2   business in this state.

3       21.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant

4   Kissmetrics operates primarily in Redwood Shores, California.

5   **GENERAL ALLEGATIONS**

6   **A.    Plaintiffs' and Class Members' Interest in Privacy and Integrity of their Software**

7       22.     Plaintiffs and Class Members value their privacy while Web-browsing.

8       23.     Plaintiffs and Class Members have a reasonable expectation of privacy while

9   Web-browsing.

10       24.     Plaintiffs and Class Members do not want to be tracked online.

11       25.     Plaintiffs and Class Members believe their Web-browsing is private and not the

12   business of anyone except the Website with which they choose to communicate.

13       26.     Plaintiffs' and Class Members' online communications—*i.e.*, their web browsing

14   activities, including their video viewing choices – involve their personal information of a private,

15   confidential, sensitive, and intimate nature.

16       27.     Plaintiffs and Class Members believe their decisions to disclose or not disclose in-

17   formation when they view a particular Web page, select content or options on the page, or enter

18   information on the page, is their decision to make.

19       28.     Plaintiffs and Class Members believe the information they disclose online is an

20   asset they possess and to which online third parties have no presumptive right of access.

21       29.     Plaintiffs and Class Members believe their computers, Internet connectivity

22   through their ISPs, and software installed on their computers ("Computer Assets")—are theirs to

23   use and control, to preserve their privacy and for other reasons, such as preventing unwanted

24   communications from diminishing the speed of their Internet connections.

25       30.     Plaintiffs and Class Members believe their Computer Assets are assets they pay

26   for, possess, and/or to which they enjoy a right of possession and use.

27       31.     Plaintiffs and Class Members believe online parties with whom they have not

28   chosen to communicate have no presumptive right to access or use Plaintiffs' and Class Mem-

bers' Computer Assets.

32.    Plaintiffs' and Class Members' reasonably expect that the code transmitted by the websites they patronize and the third parties utilized by those websites will activate intended software functions on Plaintiffs' and Class Members' computers—that is, the websites and third parties will use web page display code to display web pages and will use graphics code to display images.

33.    Plaintiffs and Class Members reasonably expect that the websites they patronize and the third parties utilized by those websites will not transmit code that repurposes web page display software and graphics software to perform unintended functions, such as tracking and circumvention of privacy protection mechanisms in Plaintiffs' and Class Members' software.

34.    The aforementioned expectations are material to Plaintiffs and Class Members in protecting their privacy interests and keeping their Computer Assets from being used in ways Plaintiffs and Class Members' do not want their Computer Assets used, including to cause unexpected software operation and to diminish and invade their privacy interests.

35.    The aforementioned expectations are material to Plaintiffs and Class Members in their decisions to patronize or avoid websites.

**B.     Website Defendants and Kissmetrics Tracking Exploits[1]**

36.    Plaintiffs and Class Members share reasonable expectations about tracking of their online activities and limits of that tracking, relating to who will be tracking, what will be tracked, and how tracking will be done.

37.    Plaintiffs and Class Members reasonably expect that websites performing tracking do so by storing information in cookies on the computers of visitors to their websites.

38.    The Website Defendants and Kissmetrics created several shadow mechanisms for tracking, using software on Plaintiff and Class Members' computers in ways the software was

---

[1] As used in this complaint, "exploit" is a computer technology term of art that means computer code, computer commands, or electronic data that interacts with computer software in a way that causes the software to function in a manner not expected or intended by its owner/user, for the advantage or benefit of the party deploying the code, commands, or data. When used as a verb, "exploit" means to engage in the activity described in the preceding sentence.

1    not designed to be used and that Plaintiff and Class Members would not reasonably expect it to

2    be used.

3        39.    The Website Defendants and Kissmetrics engage in these tracking activities re-

4    gardless of any visitor's browser privacy controls over accepting, blocking, or deleting cookies.

5        ***Defendants' exploits of browser cache***

6        40.    The purpose of a browser cache is to store, on a user's computer, copies of web

7    pages viewed by the user. The next time the user visits the web page, if it has not changed, the

8    page can simply be loaded from the browser cache instead of being downloaded from the Inter-

9    net, which would take more time.

10       41.    The Website Defendants and Kissmetrics, however, repurposed the browser cache

11   of Plaintiffs' and Class Members' browser software. They coordinated together so that Kissmet-

12   rics stored coded information, specific to each individual Plaintiff and Class Member, in the code

13   used to display the Website Defendants' web pages. The code had nothing to do with what the

14   user viewed. Like cookies, the code contained tracking identifiers.

15       42.    When a Plaintiff or Class Member returned to a Website Defendant's web page,

16   the browser automatically retrieved its cached copy of the web page, which activated the embed-

17   ded Kissmetrics scripts that retrieved previously set tracking codes embedded in that page.

18       43.    Using the tracking codes stored in the cached page, Kissmetrics respawned its

19   own and the Website Defendants' tracking cookies.

20       ***Defendants' exploit of HTML5 storage***

21       44.    For those Plaintiffs and Class Members using recent browser versions enabled

22   with HTML5, the Website Defendants stored tracking information in storage area referred as

23   "DOM local storage."

24       45.    The Website Defendants used DOM local storage to store unique identifiers, iden-

25   tified by the label, "ai," assigned to Plaintiffs and Class Members. The Website Defendants

26   shared these unique identifiers with Kissmetrics, such that the identical value was stored in

27   Kissmetrics' "km_cid" cookie.

28       46.    The coordinating and respawning (or "resurrecting") of cookies using the Website

Second Amended                              6                         No. 3:11-cv-03796-EDL
Class Action Complaint

Defendants' DOM local storage values was performed by Kissmetrics' code embedded in their web pages.

47.     It is contrary to Internet standards, for privacy reasons, for two websites to share common identifiers.

48.     It is contrary to Internet standards to use alternative mechanisms to cookies, re-spawn cookies, and bypass a user's cookie controls by using DOM local storage, in which the information never expires, without first obtaining user consent.

### *Defendants' exploit of Adobe Flash LSOs*

49.     Adobe Flash Player software is installed on the majority of U.S. consumers' computers, including those of Plaintiffs and Class Members.

50.     LSOs were designed to store information such as users' volume control settings for videos, game score for multi-session video games, and other user preferences for playing content using their Flash players—not as an alternative to browser cookies to track users.[2]

51.     Unlike cookies, for which commercial browsers provide consumers some measure of control, consumers have no reasonable means to block, detect, or delete LSOs and are burdened by other, material differences between cookies and LSO. See Figure 1, below.

52.     The Website Defendants repurposed the Adobe Flash software installed on Plaintiffs' and Class Members' computers: the Website Defendants used Adobe Flash local shared objects (LSOs) on Plaintiffs' and Class Members' computers as an alternative mechanism in which

---

[2] Adobe Systems Incorporated has stated:

> Adobe does not support the use of our products in ways that intentionally ignore the user's expressed intentions.
> . . .
> In every case where rich Internet applications are possible, Local Storage is available (and necessary). The Local Storage capability in Adobe Flash Player is equivalent in concept to the emerging Local Storage capabilities in *i.e.* HTML5 and Silverlight. The fact that Local Storage in these technologies is distinct from the existing browser cookie system and treated as such by the browsers today underscores the need for responsible use of Local Storage in modern Web applications.

Responses to Adobe's small step forward on Flash-cookie control, posted by Wiebke Lips, Adobe Systems Inc., Jan. 29, 2010, available at http://blog.privacychoice.org/2010/01/29 adobes-small-step-forward-on-flash-cookie-control; see also Letter to FTC, Adobe Systems Inc., Jan. 27, 2010, p. 9, available at http://www.ftc.gov/os/comments/privacyroundtable/544506-00085.pdf.

to store the same information it was storing in cookies, including a Flash LSO named "guid" (a term that typically means "global unique identifier") that the Website Defendants uses to res-pawn a cookie of the same name.

53.    Similarly, Kissmetrics repurposed the Adobe Flash software installed on Plain-tiffs' and Class Members' computers: Kissmetrics used Adobe Flash local shared objects (LSOs) on Plaintiffs' and Class Members' computers as an alternative mechanism in which to store tracking information in Adobe Flash LSOs.

54.    The Adobe Flash LSOs were not used by Defendants for purposes of retaining us-er preferences for the display of Flash-based video content.

55.    On Plaintiffs' and Class Members' computers, Defendants' LSOs remain stored and available to Defendants for their use.

56.    Plaintiffs and Class Members did not expect that, instead of using Plaintiffs' and Class Members' Adobe Flash software to display rich media content, Defendants would repur-pose Plaintiffs' and Class Members' software to assign persistent, unique, identifying codes that evaded browser controls and were effectively undeletable.

**C.    Harm**

57.    Plaintiffs and other members of the Class seek to maintain privacy and confiden-tiality of their unique, personal, and individual information assets, including PII and details of their browsing and online viewing activities.

Figure 1. *Comparison of cookies and LSOs*

| *Cookies* | *Adobe Flash LSOs* |
|---|---|
| *Characteristics and Operation* | |
| [a]  subject to global standards ........................... | subject to Adobe specifications |
| [b]  set/used only by originating Website .......... | set/used by multiple Websites* |
| [c]  4 kilobytes .................................................. | No limit; up to 100 KB by default |
| [d]  expires when user exits browser, by default... | persistent by default |
| *User Controls* | |
| [e]  can control through browser ........................ | cannot control through browser** |
| [f]  can identify originating Website ................. | originating Website easily obscured* |
| [g]  can view cookie contents ............................. | cannot reasonably view LSO contents |
| [h]  relatively apparent and usable ..................... | not reasonably apparent and usable |

\* Adobe Flash permits cross-domain LSO creation and use, *i.e.*, one Website can set an LSO for another Website, or read another Website's LSOs; Flash also permits cross-site scripting, which exposes individuals to malicious computer compromise.

\*\* User must be aware of and use Adobe's proprietary tools on its Website.

58.     The private and confidential character of Plaintiffs' and Class Members' personal information is further demonstrated by Defendants' use of surreptitious and deceptive methods to deposit unconsented to cookies and exploits of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality described herein on Plaintiffs' and Class Members' computers.

59.     Defendants' attempts to hide their practices included code obfuscation, that is, they developed tracking code using programming and command statements designed to obscure the purpose and function of those statements.

60.     Further, the Kissmetrics code embedded in the Website Defendants web pages operated so as to be inescapable, cycling through tracking data stored in cookies, browser cache files, HTML5 DOM local storage, and Adobe Flash LSOs, so that it could retain Plaintiffs' and Class Members' tracking data by one means or another, and thereby track Plaintiffs and Class Members over long periods of time and across multiple websites, regardless of whether they were registered or logged in.

61.     Plaintiff and Class Members had no reasonable means to detect or control these

tracking activities.

62.   Defendants' exploits of Plaintiffs' and Class Members' HTML5 DOM storage and browser cache functionality are so outside the boundaries of reasonable expectations that even industry experts had not previously observed these exploits "in the wild," that is, in actual use on websites available to the public.

63.   Defendants acquired personal information to which they were not entitled and did so without Plaintiffs' and Class Members' consent.

64.   Defendants' conduct in acquiring such information without authorization or consent has caused and causes economic loss to Plaintiffs and Class Members in that the personal information acquired by Defendants has economic value to Plaintiffs and Class Members.

65.   In addition, Defendants' conduct in acquiring such information without authorization or consent has caused economic loss to Plaintiffs and Class Members in that such information has economic value to Plaintiffs and Class Members as an asset they exchange for valuable content and services provided by websites; Plaintiffs and Class Members would have blocked Defendants' exploits of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality described herein, would not have patronized Defendants' websites, and would have avoided websites utilizing Defendants' exploitative repurposing of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality described herein; Defendants' conduct has thus imposed opportunity costs on Plaintiffs and Class Members, depriving them of the opportunity to exchange their valuable information for the content and services of websites engaging in practices that comported with Plaintiffs' and Class Members' reasonable privacy expectations.

66.   Defendants' conduct in using Plaintiffs' and Class Members' Computer Assets to exploit Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality for tracking Plaintiffs and Class Members constituted the unconsented use of Plaintiffs' and Class Members' Computer Assets, including Internet connectivity, for which Plaintiffs and Class Members paid, and so Defendants acquired the use of such assets without payment and thus subjected Plaintiffs and Class Members to economic loss.

67.     Defendants' unconsented use of Plaintiffs' and Class Members' Computer Assets, for which Plaintiffs and Class Members paid, diminished the performance of Plaintiffs' and Class Members' computers and Internet connectivity, in that LSO-based methods of information collection require the transfer of larger files using more resource-intensive computer processes that must be completed in sequence during the download of Web pages, causing Web pages to load more slowly than Web pages involving the transfer of cookie values; such diminution in performance of Computer Assets constituted an economic loss to Plaintiffs and Class Members.

68.     The consequences of the aforementioned conduct also constitute an interruption in service in that they were recurrent, through the Class Period, affecting Plaintiffs' and Class Members' experiences on numerous websites.

69.     Defendants' use of Plaintiffs' and Class Members' Computer Assets and collection and use of their personal information in a nontransparent manner, which cannot reasonably be detected at the time or later discovered, has deprived Plaintiffs and Class Members of the ability to protect their privacy and Computer Assets, assess the effects of Defendants' actions on their privacy and Computer Assets, and reasonably undertake self-help measures.

70.     Defendants' use of exploits of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality described herein subjects and/or has subjected Plaintiffs and Class Members to additional harm in that, in further circumvention of their browser settings, Defendants have re-spawned cookies that Plaintiffs and Class Members deleted, and/or Plaintiffs and Class Members face the imminent harm of such re-spawning through the various exploit methods described herein.

71.     In addition, Defendants' conduct in acquiring such information without authorization or consent has caused economic loss to Plaintiffs and Class Members in that such information has economic value to Plaintiffs and Class Members as an asset they exchange for valuable content and services provided by websites; Plaintiffs and Class Members would have blocked Defendants' exploits of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality would not have patronized Defendants' websites, and would have avoided websites that perpetrated exploits of Plaintiffs' and Class Members' Flash soft-

1    ware, browser HTML5 storage, and browser cache functionality described herein; Defendants'

2    conduct has thus imposed opportunity costs on Plaintiffs and Class Members, depriving them of

3    the opportunity to exchange their valuable information for the content and services of websites

4    engaging in practices that comported with Plaintiffs' and Class Members' reasonable privacy ex-

5    pectations.

6           72.    In addition, Defendants impose discernible opportunity costs on Plaintiffs and

7    Class Members. Websites can compete and thrive only if they sustain a sufficient traffic volume

8    to attract merchants and advertisers.

9           73.    Plaintiffs and Class Members, through their patronage, provide that traffic and so

10   barter for their ability to access—and continue to enjoy—the content and services they bought

11   with that patronage.

12          74.    Defendants, through their conduct, deprived and deprive Plaintiffs and Class

13   Members of the opportunity to use their information to purchase from and promote the continued

14   availability of websites that conform to their reasonable expectations, that is, online merchants

15   that deal honestly in the content and services offered to consumers and their related privacy dis-

16   closures.

17          75.    Plaintiffs and Class Members incorporated privacy considerations into their

18   online viewing decisions when they visited the Website Defendants' websites instead of other

19   websites because they trusted that the Website Defendants' privacy practices comported with

20   their privacy preferences

21          76.    Had Plaintiffs and Class Members known that Defendants' privacy practices were

22   not what would reasonably be expected, *i.e.*, that Defendants used unauthorized, persistent cook-

23   ies and other devices for tracking browsing activities, which Defendants accomplished by ex-

24   ploiting Plaintiff and Class Members' Adobe Flash software, browser HTML5 storage, and

25   browser cache functionality, Plaintiffs and Class Members would not have visited the Website

26   Defendants' websites.

27          77.    Plaintiffs' and Class Members' experiences are consistent with and borne out by

28   research showing that consumers purchase from online retailers who better protect their privacy

1    and who prominently display their privacy practices; and that once privacy information is more

2    salient, consumers are willing to pay a premium to purchase from more privacy protective web-

3    sites. See J. Tsai, S. Egelman; L. Cranor; A. Acquisiti [Carnegie Mellon Univ.], "The Effect of

4    Online Privacy Information on Purchasing Behavior: An Experimental Study" (June 2011), In-

5    formation Systems Research, Vol. 22:2 at 254–268.

6    78.    Finally, the personal information Defendants wrongfully obtained from Plaintiffs

7    and Class Members constitutes valuable data in the advertising-related market for consumer in-

8    formation. Plaintiff and Class Members are presently harmed or face imminent harm from De-

9    fendants' wrongful acquisition and use of their information, preempting Plaintiffs and Class

10   Members from realizing for themselves the full value of their own information.

11   79.    The costs and harms described above are aggravated by Defendants' continued re-

12   tention and commercial use of the improperly acquired user data; by reducing the scarcity of

13   Plaintiffs' and Class Members' valuable information, Defendants has further reduced the eco-

14   nomic value of such information, causing Plaintiffs and Class Members economic harm.

15   80.    Thus, Defendants' unauthorized taking of Plaintiffs' and other Class Members'

16   personal information therefore imposes financial harm on them and constitutes an unwanted cost

17   incurred by them for accessing Defendants' website.

18   81.    Plaintiffs' and other Class Members' information acquired by Defendants had and

19   has discernible value to them; the extent of Defendants' acquisition of personal information and

20   its value can be established through discovery of information that is in Defendants' possession,

21   combined with data available in the market expert analysis.

22                              **CLASS ALLEGATIONS**

23   82.    The "Class Period" is defined as the period from March 4, 2011 through July 28,

24   2011, inclusive.

25   83.    Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure,

26   Plaintiffs brings this action pursuant to on behalf of themselves and the following Class:

27                  All individuals and entities in the United States who visited a

28                  Website Defendant's website and were assigned Kissmetrics'

---

Second Amended                         13                  No. 3:11-cv-03796-EDL
Class Action Complaint

1    and Website Defendant's identifiers that were created using

2    such individuals or entities' Adobe Flash software, browser

3    HTML5 storage, or browser cache functionality during the

4    Class Period.

5    84.    Excluded from the Class are Defendants, and their assigns, successors, and legal

6 representatives, and any entities in which Defendants have controlling interests.

7    85.    Also excluded from the Class are the judge to whom this case is assigned and

8 members of the judge's immediate family.

9    86.    Plaintiffs reserve the right to revise the definition of the Class based on facts they

10 learn in the course of litigation.

11    87.    The Class consists of millions of individuals, making joinder impractical. During

12 the Class Period, on a monthly basis, millions of individuals viewed Defendants' content and

13 were subjected to Defendants' exploits of Plaintiffs' and Class Members' Flash software, brows-

14 er HTML5 storage, and browser cache functionality.

15    88.    Plaintiffs' claims are typical of the claims of all other members of the Class.

16    89.    Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs

17 have retained counsel with substantial experience in prosecuting complex litigation and class ac-

18 tions, including privacy cases.

19    90.    Plaintiffs and their counsel are committed to prosecuting this action vigorously on

20 behalf of the Class and have the financial resources to do so.

21    91.    Plaintiffs and their counsel do not have any interests adverse to those of the Class.

22    92.    Absent a class action, most Class Members would find the cost of litigating their

23 claims to be prohibitive and would have no effective remedy.

24    93.    The class treatment of common questions of law and fact in this matter is superior

25 to multiple individual actions or piecemeal litigation, in that it conserves the resources of the

26 Court and litigants and promotes consistency and efficiency of adjudication.

27    94.    Defendants have acted and failed to act on grounds generally applicable to Plain-

28 tiffs and the Class, requiring the Court's imposition of uniform relief to ensure compatible stand-

1    ards of conduct toward the Class.

2         95.    The factual and legal bases of Defendants' liability to Plaintiffs and Class Mem-

3    bers are the same, resulting in injury to Plaintiffs and all other Class Members. Plaintiffs and

4    Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

5         96.    There are many questions of law and fact common to Plaintiffs and the Class and

6    which predominate over any questions that may affect only individual Class Members. Common

7    and predominant questions for the Class include but are not limited to the following:

8              a.    whether Defendants circumvented Plaintiffs' and Class Members' browser

9    and software control in exploiting Plaintiffs' and Class Members' Flash software, browser

10   HTML5 storage, and browser cache functionality described herein on Plaintiffs' and Class

11   Members' computers;

12             b.    whether Defendants' exploits of Plaintiffs' and Class Members' Flash

13   software, browser HTML5 storage, and browser cache functionality described herein was with-

14   out consent, without authorization, and/or exceeding authorization;

15             c.    whether Defendants obtained and shared, or caused to be obtained and

16   shared, Plaintiffs' and Class Members' personal information through tracking using exploits of

17   Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache

18   functionality described herein that Defendants placed on their computers;

19             d.    what personal information of Plaintiffs and Class Members was obtained

20   and continues to be retained and used by Defendants;

21             e.    what are the identities of third parties that obtained Plaintiffs' and Class

22   Members' personal information as a result of Defendants' conduct;

23             f.    whether Defendants' conduct described herein violates the statutory and

24   common-law bases alleged in the Claims for Relief, below;

25             g.    whether Defendants' acquisition of Plaintiffs' and Class Members' per-

26   sonal information and use of Plaintiffs' and Class Members' Computer Assets harmed Plaintiffs

27   and Class Members;

28             h.    whether Defendants' use of Plaintiffs' and Class Members' Computer As-

sets damaged and/or diminished the utility and/or value of those Computer Assets;

        i.    whether, as a result of Defendants' conduct, Plaintiffs and Class Members are entitled to equitable relief and/or other relief, and if so the nature of such relief; and

        j.    whether, as a result of Defendants' conduct, Plaintiffs and Class Members are entitled to damages, including, statutory, punitive, liquidated and/or treble damages.

97.    The questions of law and fact common to the Class predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

98.    Plaintiffs' claims for relief include those set forth below.

**CLAIMS FOR RELIEF**

**<u>COUNT ONE</u>**

**TRESPASS TO CHATTEL**

99.    Plaintiffs incorporate the above allegations by reference as if here fully set forth.

100.    Plaintiffs and Class Members were, during the Class Period, the owners and/or possessors of computers on which Defendants, surreptitiously and without consent, used Plaintiff and Class Members' own Computer Assets to exploit Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality, to circumvent privacy controls and collect Plaintiff and Class Members' personal information.

101.    Defendants dispossessed Plaintiffs and Class Members of the use of their computers, software, and Internet connectivity by commandeering those resources for Defendants' own purposes.

102.    Defendants materially impaired the condition, quality, and value of Plaintiffs' and Class Members' computers by their exploits of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality and their circumvention of Plaintiffs' and Class Members' browser and software controls to collect and/or cause the collection of Plaintiffs' and Class Members' personal information.

103.    Defendants' conduct constituted an ongoing and effectively permanent, material impairment of Plaintiffs' and Class Members' computers in that Defendants' conduct affected

Plaintiffs and Class Members in a substantial amount of their Web-browsing, throughout the Class Period, through the use of LSOs and the artifacts of other exploits described herein that continue to reside on Plaintiffs' and Class Members' computers, and through which Defendants obtained information the use of which they continue to enjoy.

104.    Plaintiffs and Class Members each had and have legally protected, privacy and economic interests in their Computer Assets and their personal information.

105.    Plaintiffs and Class Members sustained harm as a result of Defendants' actions, in that the expected operation and use of their Computer Assets were altered and diminished on an ongoing basis.

106.    As a direct and proximate result of Defendants' trespass to chattels and interference, unauthorized access, intermeddling conduct affecting Plaintiffs' and Class Members' Computer Assets, Plaintiffs and Class Members have been injured, as described above.

107.    Plaintiffs, individually and on behalf of the Class, seeks injunctive relief restraining Defendants from further such trespass to chattels and requiring Defendants to account for their use of Plaintiffs' and Class Members' Computer Assets, account for the personal information they have acquired, purge such data, and pay damages in an amount to be determined.

## COUNT TWO

### VIOLATION OF THE COMPUTER CRIME LAW

### CALIFORNIA PENAL CODE, SECTION 502

108.    Plaintiffs incorporate the above allegations by reference as if here fully set forth.

109.    Defendants violated California Penal Code section 502 by knowingly accessing, copying, using, made use of, interfering, and/or altering, data belonging to Plaintiffs and Class Members: (1) in and from the State of California; (2) in the home states of the Plaintiffs and Class Members; and (3) in the state in which the servers that provided the communication link between Plaintiffs and Class Members and the websites they interacted with were located.

110.    Defendants violated California Penal Code section 502(c)(1) by knowingly accessing and without permission altering and making use of data from Plaintiffs' and Class Members' computers in order to devise and execute business practices to deceive Plaintiffs and Class

Members into surrendering private electronic communications and activities for Defendants' financial gain, and to wrongfully obtain valuable private data from Plaintiffs.

111.    Defendants violated California Penal Code section 502(c)(2) by knowingly accessing and without permission taking, or making use of data from Plaintiffs' and Class Members' computers.

112.    Defendants violated California Penal Code section 502(c)(3) by knowingly and without permission using and causing to be used Plaintiffs' and Class Members' computer services.

113.    Defendants violated California Penal Code section 502(c)(4) by knowingly accessing and, without permission, adding and/or altering the data from Plaintiffs' and Class Members' computers.

114.    Defendants violated California Penal Code section 502(c)(5) by knowingly and without permission disrupting or causing the disruption of Plaintiffs' and Class Members' computer services or denying or causing the denial of computer services to Plaintiffs and the Class.

115.    Defendants violated California Penal Code section 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiffs' and Class Members' computers, computer system, and/or computer network.

116.    Defendants violated California Penal Code section 502(c)(7) by knowingly and without permission accessing or causing to be accessed Plaintiffs' and Class Members' computers, computer systems, and/or computer networks.

117.    Defendants violated California Penal Code section 502(c)(8) by knowingly introducing a computer contaminant into the Plaintiffs' and Class Members' computers, computer systems, and/or computer networks, and doing so to obtain data regarding Plaintiffs' and Class Members' electronic communications.

118.    Plaintiffs and Class Members have suffered irreparable injury from these unauthorized acts of disclosure in that their information has been harvested, retained, and used by Defendants, and continues to be retained and used by Defendants; due to the continuing threat of such injury and, in addition, the threat that Defendants will transfer Plaintiffs' and Class Mem-

bers' information to yet other third parties, Plaintiffs and Class Members have no adequate remedy at law, entitling them to injunctive relief.

119.    Plaintiffs and Class Members have suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

120.    As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code section 502, Defendants have caused loss to Plaintiffs and Class Members in an amount to be proven at trial. Plaintiffs and Class Members are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code section 502(e).

121.    Plaintiffs and the Class Members seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

122.    Plaintiffs and Class Members have suffered irreparable and incalculable harm and injuries from Defendants' violations. The harm will continue unless Defendants are enjoined from further violations of this section. Plaintiffs and Class Members have no adequate remedy at law.

123.    Plaintiffs and Class Members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code section 502(e)(4) because Defendants' violation were willful and, on information and belief, Defendants is guilty of oppression, fraud, or malice as defined in Cal. Civil Code section 3294.

124.    Defendants' unlawful access to Plaintiffs' and Class Members' computers and electronic communications has caused them irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs' and Class Members' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs and Class Members to remedies including injunctive relief as provided by California Penal Code section 502(e).

## COUNT THREE

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

### TITLE 18 UNITED STATES CODE, SECTION 1030, *ET SEQ.*

125.     Plaintiffs incorporate the above allegations by reference as if here fully set forth.

126.     Plaintiffs and the Class Members' computers are computers used in and affecting interstate commerce and communication and are therefore "protected computers" as defined in the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030(e)(2).

127.     Defendants violated the CFAA, 18 U.S.C. § 1030(a)(4) in that they knowingly and with intent to defraud, accessed the protected computers of Plaintiffs and the Class without authorization, or exceeding authorized access, and by means of such conduct, furthered the intended fraud and obtained things of value.

128.     Defendants violated the CFAA, 18 U.S.C. § 1030(a)(5)(A) in that Defendants knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to the protected computers of Plaintiffs and the Class.

129.     Defendants violated the CFAA, 18 U.S.C. § 1030(a)(5)(B) in that Defendants intentionally accessed the protected computers of Plaintiffs and Class Members without authorization, and as a result of such conduct, recklessly caused damage.

130.     Defendants violated the CFAA, 18 U.S.C. § 1030(a)(5)(C) in that Defendants intentionally accessed the protected computers of Plaintiffs and Class Members without authorization and knowingly transmitted and/or caused the transmission of commands to Plaintiffs' and Class Members' computers in the form JavaScript and other code that effected exploits of Plaintiffs' and Class Members' Flash software, browser HTML5 storage, and browser cache functionality; Defendants intended that these commands be transmitted to and processed by Plaintiffs' and Class Members' computers and the commands were, in fact, transmitted to and processed by Plaintiffs' and Class Members' computers.

131.     Defendants obtained personal information from Plaintiffs' and Class Members' computers, including information about their web browsing activities and including video view-

ing selections.

132.    Defendants caused damage to Plaintiffs and Class Members computers in that Defendants circumvented their browser privacy controls, effectively rendering those controls non-operational for all of Plaintiff and Class Members' web-browsing on its website and other websites on it serves ad and/or delivers content.

133.    Defendants intended to cause such damage in that Defendants' personal information harvesting and tracking technologies were designed to disable Plaintiffs' and Class Members' browser privacy controls.

134.    Defendants' access to Plaintiff and Class Members' computers, disabling of browser privacy controls, and taking of information, was without authorization and exceeding authorization in that it circumvented Plaintiffs' and Class Members' express prohibition against tracking.

135.    Defendants' unlawful access to Plaintiff and Class Members' computers, use of their Computer Assets, interruption of their services, and taking of their personal information was carried out through the same automated process, which caused the losses alleged in section C, "Harm," above, resulting in an aggregated loss to Plaintiffs and Class Members of at least $5,000 within a one-year period.

136.    Defendants acted without authorization or exceeding authorization in that Plaintiffs and the Class Members did not give Defendants permission or consent to exploit the software on Plaintiffs' and Class Members' computers, circumvent their browser privacy controls, store persistent identifiers, and collect personal information using those identifiers.

137.    Defendants also acted without authorization or exceeding authorization in that Plaintiffs and the Class Members did not give Defendants permission or consent to place repurposed LSO files or other repurposed storage objects or elements.

138.    Defendants' conduct was knowing and with intent to defraud in that, contrary to reasonable and accepted practices and contrary Plaintiffs' and Class Members' reasonable expectations, Defendants affirmatively implemented code designed to circumvent Plaintiffs and Class Members privacy controls without detection and, further, was obfuscated to evade even more so-

1    phisticated detection efforts than would typically be exercised by Plaintiffs and Class Members.

2         139.    Defendants furthered their intended fraud, placing persistent identifiers and other

3    storage objects on Plaintiffs' and Class Members' computers to collect and maintain Plaintiffs'

4    and Class Members' PII and to share that information with third parties without the knowledge

5    and consent, and authorization of Plaintiffs and Class Members.

6         140.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class

7    Members have suffered harms and losses and incurred costs that include those described above.

8         141.    Defendants' unlawful access to Plaintiffs' and Class Members' computers

9    through the use of repurposed LSOs and other tracking exploits described herein, resulted in an

10   aggregated loss to Plaintiffs and the Class of at least $5,000 within a one-year period.

11        142.    Therefore, Plaintiffs and the Class are entitled to compensatory damages and eq-

12   uitable relief.

13        143.    Defendants' unlawful access to Plaintiffs' and Class Members' computers has

14   caused Plaintiffs' and Class Members' irreparable injury. Unless restrained and enjoined, De-

15   fendants will continue to commit such acts. Plaintiffs' and Class Members' remedy at law is not

16   adequate to compensate them for these inflicted, imminent, threatened, and continuing injuries,

17   entitling Plaintiffs and the Class to remedies including injunctive relief as provided by 18 U.S.C.

18   § 1030(g).

19                                        **COUNT FOUR**

20              **VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL")**

21   **CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200, *ET SEQ.***

22        144.    Plaintiffs incorporate the above allegations by reference as if here fully set forth.

23        145.    By engaging in the above-described acts and practices, Defendants have commit-

24   ted one or more acts of unfair competition within the meaning of the UCL and, as a result, Plain-

25   tiffs and the Class have suffered injury-in-fact and have lost money and/or property—

26   specifically, personal information and the full value of their computers.

27        146.    Defendants' actions described above, including False Advertising, are in violation

28   of California Business and Professions Code section 17500, *et seq.* and violations of the right of

1    privacy enshrined in Article I, Section 1 of the Constitution of the State of California.

2         147.    In addition, Defendants' business acts and practices are unlawful, because they

3    violate California Business and Professions Code section 17500, *et seq.*, which prohibits false

4    advertising, in that they were untrue and misleading statements relating to Defendants' perfor-

5    mance of services and with the intent to induce consumers to enter into obligations relating to

6    such services, and regarding statements Defendants knew were false or by the exercise of rea-

7    sonable care Defendants should have known to be untrue and misleading.

8         148.    Defendants' business acts and practices are also unlawful in that they violate the

9    above-mentioned statutes, including California Penal Code, section 502 and Title 18, United

10   States Code, Section 1030. Defendants are therefore in violation of the "unlawful" prong of the

11   UCL.

12        149.    Defendants' business acts and practices are unfair because they cause harm and

13   injury-in-fact to Plaintiffs and Class Members and for which Defendants have no justification

14   other than to increase, beyond what Defendants would have otherwise realized, its profit in fees

15   from advertisers and its information assets through the acquisition of consumers' personal infor-

16   mation. Defendants' conduct lacks reasonable and legitimate justification in that Defendants

17   have benefited from such conduct and practices while Plaintiffs and the Class Members have

18   been misled as to the nature and integrity of Defendants' services and have, in fact, suffered ma-

19   terial disadvantage regarding their interests in the privacy and confidentiality of their personal in-

20   formation. Defendants' conduct offends public policy in California tethered to the right of priva-

21   cy set forth in the Constitution of the State of California, and California statutes recognizing the

22   need for consumers to obtain material information with which they can take steps to safeguard

23   their privacy interests, including California Civil Code, Section 1798.80.

24        150.    In addition, Defendants' *modus operandi* constituted a sharp practice in that De-

25   fendants knew or should have known that consumers care about the status of personal infor-

26   mation and its privacy but were unlikely to be aware of the manner in which Defendants failed to

27   fulfill its obligation to observe consumers' privacy expressed in their browser settings. Defend-

28   ants are therefore in violation of the "unfair" prong of the UCL.

151.    Defendants' acts and practices were fraudulent within the meaning of the UCL because they are likely to mislead the members of the public to whom they were directed.

152.    As a result, Plaintiffs and the Class have suffered and will continue to suffer damages.

**COUNT FIVE**

**VIOLATION OF RIGHT TO PRIVACY**

**CONSTITUTION OF THE STATE OF CALIFORNIA, ARTICLE I, SECTION 1**

153.    Plaintiffs incorporate the above allegations by reference as if here fully set forth.

154.    Plaintiffs have a legally protected privacy interest in their electronic communications and in the highly detailed and confidential personal information concerning them that Defendants tracked and shared with third parties over a substantial period of time, without their knowledge or consent.

155.    The right of Plaintiffs and Class Members to use their computers without having their Web browsing tracked and used by Defendants for Defendants' and other third parties' own commercial and advertising purposes constitutes a significant right relating to the use of specific personal property, without interference by Defendants through deception and unauthorized access.

156.    Defendants failed to notify Plaintiffs and Class Members of Defendants' clandestine tracking activities, which included collection of detailed and confidential personal information from Plaintiffs and Class Members in the course of their use of the Internet in all facets of their lives (*e.g.*, for family, health, education, religion, politics, finance and assembly).

157.    Plaintiffs and Class Members had an objectively reasonable expectation of privacy from being electronically tracked by Defendants and from disclosure of their personal information, described in paragraph 156, above to third parties.

158.    Defendants' conduct, by design, allowed them to obtain Plaintiffs' and Class Members' personal information.

159.    Defendants' conduct, but design, allowed them to use common identifiers to compile and share with each other the information they collected from Plaintiffs and Class

1    Members.

2    160.    Defendants have and continue to commit the herein-described, serious invasions

3    of Plaintiffs' and Class Members' privacy.

4    161.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and

5    Class Members have suffered harm as a result of their personal information being acquired and

6    disseminated without consent.

7    162.    There are no competing or countervailing interests that outweigh the privacy in-

8    terests at stake. Accordingly, Plaintiffs and Class Members seek declaratory and injunctive relief

9    to prevent Defendants from continuing to track and expose their personal information.

10   **COUNT SIX**

11   **NEGLIGENCE**

12   163.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 98 by reference as

13   if here fully set forth.

14   164.    Plaintiffs allege Defendants' conduct in the unconsented downloading and use of

15   tracking code on Plaintiffs' and Class Members' computers was intention. In the alternative,

16   Plaintiffs allege such conduct was unintentional as detailed below.

17   165.    Defendants owed a duty to Plaintiffs and Class Members to protect their personal

18   information and data property and take reasonable steps to protect them from the wrongful taking

19   of such information and the wrongful invasion of their privacy.

20   166.    This duty was not based on any contractual obligation but arose, instead, as a mat-

21   ter of law because, at all times, Defendants knew or should have known of the likelihood of harm

22   arising from Defendants' failure to act reasonably under the circumstances alleged herein.

23   167.    Defendants had an obligation to use reasonable care to prevent such harm or to

24   adequately warn Plaintiffs and Class Members of such harm.

25   168.    Defendants have breached their duty by:

26   a.    capturing and transmitting Plaintiffs' and Class Members' personal infor-

27   mation, associated with their personal identifiers, to third parties, without Plaintiffs' and Class

28   Members' knowledge or consent;

b.      repurposing Plaintiffs' and Class Members' browser cache, HTML5 storage, and Adobe LSOs; and

c.      sharing user identifiers and profile information with each other.

169.      As a direct and proximate result of Defendants' breaches of its duties, Plaintiffs and Class Members suffered the harm described more fully in Section "C" entitled "Harm" above, each of which were a reasonably foreseeable result of Defendants' negligence.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

A.      Certify this matter as a class action.

B.      Enter judgment in favor of Plaintiffs and Class Members.

C.      Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class Members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D.      Award statutory damages to Plaintiffs and Class Members.

E.      Award compensatory damages to Plaintiffs and Class Members in amounts to be proved at trial.

F.      Award restitution against Defendants in amounts to be proved at trial.

G.      Award increased and/or treble damages in amounts to be proved at trial.

H.      Award liquidated damages in amounts to be proved at trial.

I.      Award punitive damages in the interest of justice.

J.      Award disgorgement of monies obtained through and as a result of unfair and/or deceptive acts and/or practices and/or unjust enrichment, in amounts to be proved at trial.

K.      Award Plaintiffs and Class Members pre- and post-judgment interest to the extent allowable.

L.      Make such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money and property acquired by Defendants through wrongful conduct.

M.      Award Plaintiffs and Class Members reasonable litigation expenses and attorneys'

1    fees.

2          N.      Award such other and further relief as equity and justice may require or allow.

3    Dated: April 2, 2012                    Respectfully submitted,

4

5                                            ____/s_____

6                                            By:  Scott A. Kamber (*pro hac vice*)

7    Scott A. Kamber (*pro hac vice*)
     skamber@kamberlaw.com
8    David A. Stampley (*pro hac vice*)
     dstampley@kamberlaw.com
9    **KAMBERLAW, LLC**
     100 Wall Street, 23rd Floor
10   New York, New York 10005
     Telephone:  (212) 920-3072
11   Facsimile:  (212) 202-6364

12
     Deborah Kravitz (SBN 275661)
13   dkravitz@kamberlaw.com
     **KAMBERLAW LLP**
14   141 North Street
     Healdsburg, CA 95448
15   Telephone:  (707) 820-4247
     Facsimile:  (212) 920-3081
16

17   David C. Parisi (SBN 162248)
18   dcparisi@parisihavens.com
     Suzanne Havens Beckman (SBN 188814)
19   Azita Moradmand (SBN 260271)
     amoradmand@parisihavens.com
20   **PARISI & HAVENS LLP**
21   15233 Valleyheart Drive
     Sherman Oaks, California 91403
22   Telephone:  (818) 990-1299
     Facsimile:  (818) 501-7852
23

24   Brian R. Strange (SBN 103252)
25   bstrange@strangeand carpenter.com
     **STRANGE & CARPENTER**
26   12100 Wilshire Boulevard, Suite 1900
     Los Angeles, CA 90025
27   Telephone: (310) 207-5055
     Facsimile: (310)-826-3210
28

Second Amended                 27              No. 3:11-cv-03796-EDL
Class Action Complaint

Joseph H. Malley (*not admitted*)
malleylaw@gmail.com
**Law Office of Joseph H. Malley, PC**
1045 North Zang Boulevard
Dallas, TX 75208

Counsel for Plaintiffs

1

2
## JURY TRIAL DEMAND

3
Plaintiffs hereby demand a trial by jury of all issues so triable.

4

5
Dated: April 2, 2012                          Respectfully submitted,

6

7
                                              /s
                                              _____
8                                             By: Scott A. Kamber

Scott A. Kamber *(pro hac vice)*
9   skamber@kamberlaw.com
David A. Stampley *(pro hac vice)*
10  dstampley@kamberlaw.com
**KAMBERLAW, LLC**
11  100 Wall Street, 23rd Floor
New York, New York 10005
12  Telephone:   (212) 920-3072
Facsimile:   (212) 202-6364
13

14  Deborah Kravitz (SBN 275661)
dkravitz@kamberlaw.com
15  **KAMBERLAW LLP**
141 North Street
16  Healdsburg, CA 95448
Telephone:   (707) 820-4247
17  Facsimile:   (212) 920-3081

18
David C. Parisi (SBN 162248)
19  dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
20  shavens@parisihavens.com
Azita Moradmand (SBN 260271)
21  amoradmand@parisihavens.com
**PARISI & HAVENS LLP**
22  15233 Valleyheart Drive
Sherman Oaks, California 91403
23  Telephone:   (818) 990-1299
Facsimile:   (818) 501-7852
24

25

26

27

28

Second Amended                    29              No. 3:11-cv-03796-EDL
Class Action Complaint

1
2
3
4
5

Brian R. Strange (SBN 103252)
bstrange@strangeand carpenter.com
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310)-826-3210

6
7
8

Joseph H. Malley (*not admitted*)
malleylaw@gmail.com
**Law Office of Joseph H. Malley, PC**
1045 North Zang Boulevard
Dallas, TX 75208

9
10

Counsel for Plaintiffs

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second Amended                          30                  No. 3:11-cv-03796-EDL
Class Action Complaint