1  STEPHEN W. CUSICK, SBN 111353
2      scusick@nielsenhaley.com
   NIELSEN HALEY & ABBOTT LLP
3  44 Montgomery St. Suite 750
   San Francisco CA 94104
4  Telephone (415) 693-0900
   Facsimile (415) 693-9674
5
   Attorneys for Defendant SPACE PENCIL, INC. D/B/A KISSMETRICS
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11

12 JOHN B. KIM and DAN C.                    Case No. 3:11-cv-03796-LB
   SCHUTZMAN, Individually, on Behalf
13 of Themselves and All Others Similarly    **SPACE PENCIL INC'S NOTICE OF**
   Situated,                                 **MOTION AND MOTION TO**
14                                           **DISMISS SECOND AMENDED**
            Plaintiffs,                      **COMPLAINT; SUPPORTING**
15                                           **MEMORANDUM OF POINTS AND**
       v.                                    **AUTHORITIES**
16
   SPACE PENCIL, INC. D/B/A
17 KISSMETRICS, et al.,                      Date:           Sept. 20, 2012
                                             Time:           11:00 A.M.
18          Defendants.                      Place:          Courtroom C   (S.F.)
                                             Magistrate Judge:  Hon. Laurel Beeler
19

20

21

22

23

24

25

26

27

28

_____
          KISSMETRICS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## NOTICE OF MOTION AND MOTION TO DISMISS
## SECOND AMENDED CLASS ACTION COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 11:00 a.m. on September 20, 2012, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Laurel Beeler, 450 Golden Gate Avenue, San Francisco California, Defendant Space Pencil, Inc., d/b/a KISSmetrics,will and hereby does move for an order dismissing Plaintiffs' Second Amended Class Action Complaint (the "SAC") *with prejudice* under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Court's file in this action, the arguments of counsel and any other matters the Court may properly consider.

## ISSUES TO BE DECIDED

1.  Do Plaintiffs have standing under Article III of the United States Constitution (and/or California's Unfair Competition Law)?

2.  Do Plaintiffs state a claim upon which relief can be granted, under any of the six legal theories they have pleaded?

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............... 1

II. REPRESENTATIVE PLAINTIFFS AND THE PROPOSED CLASS ...... 3

III. MOTION TO DISMISS STANDARDS ........................ 4

    A. Motion To Dismiss For Lack of Standing Under Rule 12(b)(1) ... 4

    B. Motion to Dismiss For Failure To State A Claim Under Rule 12(b)(6) ... 4

IV. ARGUMENT .......................................... 5

    A. Plaintiffs Lack Article III Standing To Pursue Their Claims. ... 5

    1. Plaintiffs plead no concrete or particular injury to themselves. ... 6

    2. The Collection of demographic information does not amount to injury. ... 2

    3. Plaintiffs unsupported claims of "diminished performance" fail to establish standing. ... 9

    B. Plaintiffs Have Failed to Plead Any Causal Connection Between Any Harm And Each Defendant's Conduct Or Role In That Harm. ... 10

    C. Plaintiffs Fail to Allege Facts Sufficient To State A Claim Under Any Of The Six Pleaded Theories. ... 11

    1. Plaintiffs fail to state a claim for Trespass To Personal Property Chattels. ... 11

    2. Plaintiffs fail to state a claim under California's Computer Crime Law (Cal. Penal Code § 502). ... 12

    3. Plaintiffs state no claim under the federal Computer Fraud and abuse Act (18 U.S.C. § 2710.) ... 14

    4. Plaintiffs fail to state a claim under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200). ... 16

    5. Plaintiffs fail to state a claim under Cal. Const. Article 1 for invasion of privacy. ... 18

    6. Plaintiffs fail to state a claim for Negligence. ... 21

    V.    CONCLUSION ....................................... 22

# TABLE OF AUTHORITIES

*Aas v. Super. Ct.*
24 Cal. 4th 627 (2000)                                                    22

*Ashcroft v. Iqbal*
129 S.Ct. 1937 (2009)                                                  4, 12

*Berryman v. Merit Prop. Mgmt., Inc.,*
152 Cal.App.4th 1554 (2007)                                              16

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)                                                       4

*Berry v. Webloyalty.com, Inc.*
2011 WL 1375665 (S.D. Cal. Apr. 11, 2011)                                20

*Birdsong v. Apple, Inc.*
590 F.3d 955 (9th Cir. 2009).                                             6

*Botello v. Morgan Hill Unified Sch. Dist.,*
2009 WL 3918930 (N.D. Cal. Nov. 18, 2009)                                19

*Cady v. Anthem Blue Cross Life & Health Ins. Co.,*
583 F.Supp. 2d 1102 (N.D. Cal. 2008).                                  6, 10

*Cel-Tech Communications, inc. v. Los Angeles Cellular Telephone Co.*
20 Cal 4th 163 (1999).                                                   18

*Charles O. Bradley Trust v. Zenith Capital LLC*
2006 WL 798991, (N.D. Cal. Mar. 24, 2006)                                19

*Chrisman v. City of Los Angeles*
155 Cal. App. 4th 29 (2007)                                              13

*Creative Computing v. Getloaded.com*
386 F.3d 930 (9th Cir. 2004)                                             15

*CompuServe, Inc. v. Cyber Promotions, Inc.*
962 F.Supp 1015 (S.D. Ohio 1997)                                         12

*Czech v. Wall Street On Demand*
674 F. Supp.2d 1102 (D. Minn. 2009)                                      15

*Doubleclick Inc. Privacy Litigation*
154 F. Supp.2d 497 (S.D.N.Y. 2001)              2, 3, 7, 8, 9, 10, 14 , 15

*Duarte v. Zachariah*
22 Cal.App.4th 1652 (1994)                                              22

*Egan v. Schmock*
93 F.Supp.2d 1090 (N.D. Cal. 2000)                                      21

*eBay, Inc. v. Bidder's Edge, Inc.*
100 F.Supp.2d 1058 (N.D. Cal. 2000)                                  11, 12

*Evan F. v. Hughson United Methodist Church*
8 Cal.App.4th 828 (1992)                                                21

*Fraley v. Facebook*
2011 WL 6303898 (N.D. Cal. Dec. 16, 2011) (Koh, J.)                      9

*Fredenburg v. City of Fremont*,
119 Cal.App.4th 408 (2004)                                              20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167 (2000).                                                     5

*Folgelstrom v. Lamps Plus, Inc.*
195 Cal.App.4th 992 (2011)                                            2, 21

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994)                                                      19

*In re Iphone Application Litig.*
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)                         2, 3, 6, 9

*Intel Corp. v. Hamidi*
30 Cal. 4th 1342 (2003)                                              11, 12

*In re Tobacco II Cases*,
46 Cal.4th 298 (2009).                                                  16

*JetBlue Airways Corp. Privacy Litig.*
379 F.Supp.2d 299 (E.D.N.Y. 2005).                                       7

*Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*
2009 U.S. Dist. LEXIS 72579 (E.D.N.Y. Aug. 4, 2009).                     15

*Johnson v. Weinberger*
851 F.2d 233 (9th Cir. 1988)                                             5

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009)                                           17

*Ladd v. Cnty. Of San Mateo,*
12 Cal.4th 913 (1996)                                                     21

*LaCourt v. Specific Media, Inc.*
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)        2, 3, 6, 7, 8, 9, 10, 13, 15 18

*Leonel v. Am. Airlines, Inc.*
400 F.3d 702 (9th Cir. 2005)                                              19

*Lee v. Chase Manhattan Bank*
2008 WL 698482 (N.D. Cal. 2008)                                            5

*Lewis v. Casey*
518 U.S. 343 (1996)                                                      5, 6

*London v. New Albertson's, Inc.*
2008 WL 4492642 (S.D. Cal. Sept. 30, 2008)                                20

*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2000)                                              4

*Low v. LinkedIn Corp.*
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)                                2, 9

*LVRC Holdings v. Brekka*
581 F.3d 1127 (9th Cir. 2009)                                             14

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992).                                                    5, 10

*McKinniss v. General Mills, Inc.*
2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007)                    17

*Merton v. American Home Mortg. Servicing, Inc.*
2009 U.S. Dist. LEXIS 99024 (C.D. Cal. Oct. 13, 2009).                    18

*Nguon v. Wolf*
517 F. Supp.2d 1177 (C.D. Cal. 2007)                                     19

*Orbit One Communs. V. Numerex Corp.*
692 F.Supp.2d 373 (S.D.N.Y. 2010)                                        14

*People v, Gentry*
234 Cal.App.3d 131 (1991)                                                12

*Peterson v. Cellco Partnership,*
164 Cal.App.4th 1583 (2008).                                             16

*Pioneer Electronics (USA), Inc. v. Superior Court*
40 Cal.4th 360 (2007)                                                              19

*Raines v. Byrd*
521 U.S. 811 (1997)                                                                 5

*Rosen v. State Farm Gen. Ins. Co.*
30 Cal. 4th 1070 (2003)                                                            22

*Scott-Codiga v. Cnty. of Monterey*
2011 WL 4434812 (N.D. Cal. Sept. 23, 2011)                                         19

*Shamrock Foods Co. v. Gast*
535 F.Supp.2d 962 (D. Ariz. 2008)                                                  14

*Summers v. Earth Island Inst.*
555 U.S. 488, 129 S.Ct. 1142 (2009)                                                 5

*Swearingen v. Haas Automation, Inc.*
2009 U.S. Dist. LEXIS 106754 (S.D. Cal. 2009).                                      13

*Sybersound Records Inc. v. UAV Corp.*
517 F.3d 1137 (9th Cir. 2008)                                                      16

*U.S. v. Aleynikov,*
2010 U.S. Dist. LEXIS 92101 (S.D.N.Y Sept. 3, 2010)                                14

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cr. 2003)                                                       17

*Waste Mgmt. of N. Am., Inc. v. Weinberger*
862 F.2d 1393 (9th Cir. 1988)                                                      4, 5

*Warth v. Seldin,*
422 U.S. 490 (1975)                                                                5, 6

*White v. Lee*
227 F.3d 1214 (9th Cir. 2000)                                                       4

*Whiteside v. Tenet Healthcare Corp.,*
101 Cal.App.4th 693 (2001)                                                         16

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I. INTRODUCTION AND SUMMARY OF ARGUMENT.**

3         Defendant Space Pencil, Inc. d/b/a KISSmetrics ("KISSmetrics") offers a software

4   analytics tool ("Analytics Tool") that allows a website to aggregate and obtain insights about

5   the activities of visitors to that site.  For example, a website owner could use this Analytics

6   Tool to determine which specific content or features on the site cause visitors to spend more

7   time on the site.  Importantly, KISSmetrics' Tool analyzes information that *visitors have*

8   *already provided to that site*.  The Tool does not provide website owners with new

9   information from other sources, does not "track" user activity across different websites, and

10  does not disclose information to any party other than the website owner that provided the

11  information from its site – *and there is no allegation that it did.*

12        Plaintiffs' Second Amended Complaint ("SAC") is the latest in a series of failed, "do

13  not track" lawsuits, based on alleged use of technology to log and analyze website activities

14  in a way that website visitors "would not reasonably expect" and that – according to Plaintiffs

15  – is "contrary to Internet standards."  (SAC ¶¶38, 47).  Although Plaintiffs invoke misleading

16  terms like "tracking" and "harvest[ing]," they do not point to single piece of information that

17  was collected about them using the Analytics Tool, much less identify any instance where

18  KISSmetrics (or any Website Defendant) used this unspecified information in a manner that

19  caused them any harm or discernable injury.  Indeed, the SAC does not contain a single fact

20  or detail about the two named Plaintiffs *at all* – what information supposedly was collected

21  about either of them, from what Website, what was done with the information, and how either

22  of them were impacted as a result.

23        Based on generalized speculation about the operation of KISSmetrics' Analytics Tool,

24  Plaintiffs assert six claims for relief against KISSmetrics and ten of its alleged customers (the

25  "Website Defendants"):

26        (i)     Trespass to Personal Property / Chattel,

27        (ii)    California's Computer Crime Law (Cal. Penal Code § 502) ("CCCL"),

28        (iii)   Computer Fraud and Abuse Act (18 U.S.C. § 1030), ("CFAA")

---

1      (iv)    California' Unfair Competition Statute (Cal. Bus. & Prof. Code §17200), ("UCL")

2      (v)    California's Right to Privacy under California's Constitution, Art. I., § 1, and

3      (vi)    Negligence.

4      Courts have consistently rejected such claims based on the alleged "tracking" of user

5 information online without consent, including the court in a recent case featuring allegations

6 virtually identical to those asserted here. *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532

7 (C.D. Cal. Apr. 28, 2011) (dismissing claims under CFAA, CCCL, UCL and Trespass to

8 Property, based on alleged tracking by ad network using Adobe "flash" cookies without

9 consent.) *See also In re Doubleclick Inc. Privacy Litigation,* 154 F. Supp.2d 497, 525

10 (S.D.N.Y. 2001)(dismissing claims under CFAA, Trespass to Property and Invasion of

11 Privacy, based on allegations that ad networks tracked user information in http cookies on

12 third party websites without consent); *In re Iphone Application Litig.,* 2011 WL 4403963

13 (N.D. Cal. Sept. 20, 2011); *Low v. LinkedIn Corp.*, 2011 WL 5509848 (N.D. Cal. Nov. 11,

14 2011).  This Court should follow these cases and dismiss the Second Amended Complaint

15 with prejudice.

16      First, Plaintiffs have failed to identify *any* concrete or particular injury to themselves

17 (or at all) that demonstrates injury-in-fact sufficient to establish Article III standing.

18 Likewise, it is well-settled that "do not track" claims of this type – which do *not* assert that

19 they lost any money or property – are insufficient to support standing under California's

20 Unfair Competition Law.  Indeed, every court to consider these claims and the abstract

21 theories of harm asserted by Plaintiffs has dismissed them for lack of standing under Article

22 III and the UCL. *Specific Media,* 2011 WL 1661532 at *3-6, 8; *In re Iphone,* 2011 WL

23 4403963 at *3-7; *LinkedIn,* 2011 WL 5509848 at *2-6..

24      Second, Plaintiffs fail to plead a viable cause of action under any of the six theories

25 alleged, and courts repeatedly have rejected such attempts to extend computer crime laws,

26 constitutional privacy protections or common law torts to the "routine commercial behavior"

27 challenged here. *Folgelstrom v. Lamps Plus, Inc.*, *supra*, 195 Cal.App.4th at  992 (2011)

28 (with respect to claim under Cal. Const. Art. 1 for invasion of privacy, the commercial use of

1   information collected from consumers, even "without [consumers'] knowledge or

2   permission," "is not an egregious breach of social norms, but *routine commercial behavior*")

3   (emphasis added); *Specific Media,* 2011 WL 1661532 at *6-8 (dismissing claims under each

4   theory alleged for failure to state a claim) *In re Iphone,* 2011 WL 4403963 at *7-15 (same);

5   *DoubleClick,* 154 F.Supp.2d 497 (same).

6

7   II.  REPRESENTATIVE PLAINTFFS AND THE PROPOSED CLASS

8         The named plaintiffs are two individual residents of Southern California, John Kim

9   and Dan Schutzman, who claim that they "used their computers to visit Defendants' websites,

10   where Defendants downloaded surreptitious code … to override Plaintiffs' privacy controls

11   and harvest their personal information."  SAC ¶¶ 1-3.  Critically, Kim and Schutzman do not

12   identify a single fact or supporting detail that substantiates this claim.  Indeed, neither of them

13   remotely alleges *which* of the different defendants' websites each visited, *what* particular

14   "personal information" they speculate was "harvest[ed]" by any particular defendant,  *how*

15   any "harvest" of such information was actually used by any particular defendant, or how they

16   suffered any actual economic or other cognizable harm from the use of such information.

17   Instead, Plaintiffs allege that KISSmetrics and several websites that allegedly used

18   KISSmetrics' Analtyics Tool employed various web-based technologies -- specifically,

19   browser cache, HTML 5 storage and Adobe Flash LSOs – to obtain unspecified information

20   in ways that Plaintiffs "would not reasonably expect" and "without first obtaining [their]

21   consent."  (SAC 38, 48, 56).

22         Plaintiffs purport to bring this action on behalf of "All individuals and entities in the

23   United States who visited a Website Defendant's website and were assigned Kissmetrics and

24   Website Defendants' identifiers that were created using such individual's Adobe Flash

25   software, browser cache HTML5 storage, or browser cache functionality during the Class

26   Period" [elsewhere defined as March 4, 2011 through July 28, 2011].  SAC ¶¶ 82-83.

27

28   **III.  MOTION TO DISMISS STANDARDS**

## A. Motion To Dismiss For Lack Of Standing Under Rule 12(b)(1)

"A federal court's judicial power extends to cases arising under the laws of the United States." *Waste Mgmt. of N. Am., Inc. v. Weinberger*, 862 F.2d 1393, 1397 (9th Cir. 1988) (citing U.S. Const. Art. III, § 2). "However, it is not enough that a litigant alleges that a violation of federal law has occurred; the litigant must have standing to invoke the federal court's power. . . . Absent injury, a violation of a statute gives rise merely to a generalized grievance but not to standing." *Id.* at 1397-98 (citations omitted). A challenge to standing under Article III "pertain[s] to a federal court's subject-matter jurisdiction" and is therefore "properly raised in a motion under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

## B. Motion To Dismiss For Failure To State A Claim Under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a court should dismiss a complaint where the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). A court must consider only the factual allegations of the complaint, not its legal conclusions nor the bare recitation of the elements of a claim, in determining whether the plaintiff has made a plain statement of the grounds of her entitlement to relief. *See,* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S.Ct. at 1949. The court must then consider whether the alleged facts state a "plausible," rather than a merely "possible" claim. *See, Iqbal*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 555. Where, as here, there is no plausible claim under the statutes alleged and amendment is futile, the court should dismiss without leave to amend. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend need not be allowed where amendment would be futile).

1    **IV. ARGUMENT**

2    **A.  Plaintiffs Lack Article III Standing To Pursue Their Claims.**

3            Plaintiffs have failed to plead facts sufficient to establish that any of them suffered a

4    cognizable injury in fact, sufficient to satisfy "the irreducible constitutional minimum of

5    standing" under Article III.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To

6    meet the requirements of Article III standing, a plaintiff bears the burden of alleging facts

7    sufficient to establish that "(1) [the plaintiff] has suffered an 'injury in fact' that is (a)

8    concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

9    injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

10   opposed to merely speculative, that the injury will be redressed by a favorable decision."

11   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180- 81 (2000).

12   A plaintiff does not satisfy the standing requirement "[w]hen '[s]peculative inferences' are

13   necessary . . . to establish [the] injury." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir.

14   1988).  Regardless of the source of the supposed right asserted, "Art. III's requirement

15   remains: the plaintiff still must allege a distinct and palpable injury *to himself*, even if it is an

16   injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501

17   (1975) (emphasis added); *see also, Waste Mgmt.*, 862 F.2d at 1397-98 ("Absent injury, a

18   violation of a statute gives rise merely to a generalized grievance but not to standing.")

19   (citations omitted); *Lee v. Chase Manhattan Bank*, 2008 WL 698482, at *5 (N.D. Cal. 2008)

20   ("[T]he mere allegation of a violation of a California statutory right, without more, does not

21   confer Article III standing.  A plaintiff invoking federal jurisdiction must also allege some

22   actual or imminent injury resulting from the violation . . . .").  That is because "the

23   requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed

24   by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142, 1151 (2009); *see

25   also, Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase

26   Article III's standing requirements by statutorily granting the right to sue to a plaintiff").

27           Importantly, in a putative class action, the named plaintiffs purporting to represent the

28   class must establish that they personally have standing to bring the action. *See, Lewis v.*

*Casey*, 518 U.S. 343, 357 (1996).  In addition, at least one plaintiff must have standing against each defendant. *See, Cady v. Anthem Blue Cross Life & Health Ins. Co.*, 583 F.Supp. 2d 1102, 1105-07 (N.D. Cal. 2008).

**1.  Plaintiffs plead no concrete or particular injury to themselves.**

Plaintiffs here, John Kim and Dan Schutzman, do not even attempt to allege a "distinct and palpable injury *to [themselves]*." *Warth*, 422 U.S. at 501 (emphasis added).  They do not identify a *single piece* of "personal information" about them that was "harvested" or "tracked" by any Defendant.  Nor do they in any way explain how either of them – Mr. Kim or Mr. Schutzman – suffered a concrete impact or harm from the web analytics practices they complain about here.

Instead of specifying a particular injury that one of them suffered, Plaintiffs rely entirely on abstract, unsupported claims about the "economic value" of user data online, "opportunity cost[s]", the "repurposing" of software and the slow loading of the Website Defendants' sites.  But these vague theories are wholly insufficient to establish injury in fact or economic loss and have been consistently rejected by courts.  *In re iPhone,* 2011 WL 4403963 at *6 ("Despite a lengthy Consolidated Complaint, Plaintiffs do not allege injury in fact to *themselves.*  This failure alone is sufficient reason to dismiss the Consolidated Complaint.") (emphasis in original) (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009)); *Specific Media,* 2011 WL 1661532 at *3-4; *LinkedIn*, 2011 WL 5509848 at *4-5.

**2.  The collection of demographic information does not amount to injury.**

Plaintiffs allege that the unspecified personal information harvested by Defendants had some economic value that Defendants supposedly usurped (although they do not explain how).  SAC ¶ 63.  Plaintiffs allege, for example, that such information is "an asset [Plaintiffs] exchange for valuable content and services provided by websites," and that Defendants "imposed opportunity costs on Plaintiffs" by somehow "depriving them of the opportunity to exchange their valuable information for the content and services of [other] websites…"  SAC

1    ¶ 65.  Conspicuously absent, however, is a single allegation that one of the named Plaintiffs

2    actually "lost" the use of his data or was in any way "deprive[d]" of the opportunity to engage

3    in any web-based activity or transaction due to the routine analytics practices challenged here.

4           More than ten years ago, this same theory was rejected as insufficient to state a claim

5    for economic harm.  In *DoubleClick,* plaintiffs alleged that the defendant used cookies

6    (downloaded from its client website owner's websites) to collect demographic information

7    that "Web users, including plaintiffs and the Class, consider to be personal and private, such

8    as names, e-mail addresses, home and business addresses, telephone numbers, searches

9    performed on the Internet, Web pages or sites visited on the Internet …" *DoubleClick,* 154

10   F.Supp.2d at 503.  In opposing a motion to dismiss, plaintiffs claimed "economic damages"

11   consisting of the value of the demographic information collected.  *Id.,* at 525.  The court ruled

12   that the collection of such information is not an economic loss to the subject:

13          [A]lthough demographic information is valued highly … the value of its

14          collection has never been considered a economic loss to the subject.

15          Demographic information is constantly collected on all consumers by

16          marketers, mail-order catalogues and retailers.  However, we are unaware of

17          any court that has held the value of this collected information constitutes

18          damage to consumers or unjust enrichment to collectors.  Therefore, it appears

19          to us that plaintiffs have failed to state any facts that could support a finding of

20          economic loss from DoubleClick's alleged violation of the CFAA.

21   *Id.*

22          These discredited theories of harm continue to be rejected by courts, including this

23   one, now that a new generation of plaintiffs' lawyers is trying to graft these theories onto the

24   latest technology. *See, e.g LinkedIn,* 2011 WL 5509848, at *4-6, *Specific Media*, 2011 WL

25   1661532, at *4-6; *In re JetBlue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299, 327

26   (E.D.N.Y. 2005).

27          The *Specific Media* ruling is especially on point, insofar as plaintiffs there complained

28   of  essentially the same conduct – i.e. the use of technologies other than browser cookies

MOTION TO DISMISS

7

1    (specifically, Adobe LSOs) to "track" users and "respawn" deleted cookies.  Specific Media

2    Inc., like DoubleClick, had created "an online third-party ad network" that earned revenue

3    "by delivering targeted advertisements" based on "behavioral profiles" compiled and created

4    for individual website visitors. *Specific Media*, 2011 WL 1661532, at *1.  Plaintiffs,

5    represented by the same attorneys who prosecute this case, brought a class action alleging

6    that Specific Media created cookies to create "unique identifiers" for website visitors, and

7    then "use[d] Adobe Flash local shared objects ('LSOs'…) to track class members without

8    their knowledge or consent." *Id.*  More specifically, plaintiffs alleged that Specific Media

9    "used LSO's in order to circumvent the privacy and security controls of users who had set

10   their browsers to block third-party cookies…" *Id.*  Plaintiffs assert the *exact same* claims

11   against KISSmetrics here, based on its use of LSOs and other non-browser cookie

12   technologies that Plaintiffs complain they did not "consent" to.

13        In response to a motion to dismiss based on lack of harm and consequent lack of Art.

14   III standing, plaintiffs in *Specific Media* argued, as Plaintiffs allege here, that "by taking and

15   retaining [plaintiffs'] personal information," *i.e.* their browsing history, Defendant has

16   deprived Plaintiffs of this information's economic value" and imposed opportunity costs by

17   preventing them from engaging in "value-for-value' exchanges" with websites that did not

18   engage in the challenged practices. *Specific Media, Inc.*, 2011 WL 1661532, at *4.  In

19   rejecting that argument, the Court in Specific Media noted:

20   ■ that plaintiffs had not stated any "particularized example" of such harm;

21   ■ that "the Complaint does not identify a single individual who was foreclosed from

22        entering into a 'value-for-value' exchange as a result of [the] alleged conduct[1];

23

---

24   [1] Plaintiffs "opportunity cost" theory also is akin to the theory that asserted by plaintiffs in

25   *DoubleClick,* who claimed as damages the economic value of their attention as drawn to the

26   specific advertisements that DoubleClick would insert into sites they visited. *DoubleClick* at 525.
     That court responded:

27        We do not commonly believe that the economic value of our attention is unjustly taken
          from us when we choose to watch a television show or read a newspaper with

28        advertisements and we are unaware of any statute or case law that holds it is. We see no
          reason why Web site advertising should be treated any differently. A person who chooses

- ■ that "no facts in the [Complaint] … indicate[d] that the Plaintiffs themselves ascribed an economic value to their unspecified personal information," and

- ■ that plaintiffs had not explained "how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party.

*Id.* Each such observation is equally true of the SAC here, and the same result should follow.

Fundamentally, the problem is not with the language or phrasing Plaintiffs have used to describe the alleged harm; the problem is with the theories of harm themselves: The collection of demographic information simply does not amount to an injury in fact for purposes of Article III standing—as courts, including this one, have repeatedly recognized. *See Fraley v. Facebook*, 2011 WL 6303898, at *8 (N.D. Cal. Dec. 16, 2011) (Koh, J.) ("The courts in [*In re iPhone Application, Specific Media, In re DoubleClick and Low*] found that the plaintiffs were unable to articulate how they were economically injured by the use of their own information to advertise to themselves and unable to articulate how the collection of demographic information was an economic loss to them.").

**3. Plaintiffs unsupported claims of "diminished performance" fail to establish standing.**

Plaintiffs' vague allegations that the Analytics Tool somehow has "diminished the performance of Plaintiffs … computers and Internet connectivity, in that LSO-based methods of information collection require the transfer of larger files using more resource-intensive computer processes that must be completed in sequence during the download on Web pages, causing Web pages to load more slowly than Web pages involving the transfer of cookie values…," and that such "diminution in performance of Computer Assets constituted an economic loss to Plaintiffs…" (SAC ¶67) also fail to establish standing.  The mere assertion

to visit a Web page and is confronted by a targeted advertisement is no more deprived of his attention's economic value than are his off-line peers.
*Id.* Here too, any visitor to any site using Kissmetrics was no more deprived of the opportunity to do something else than were his or her off-line peers.

that Defendants "diminished the performance of Plaintiffs ... computers and Internet connectivity," is supported by no alleged *fact* specific to any named Plaintiff, and instead consist of general claims about LSO-connected webpages loading slower than web pages using cookies. Because Plaintiffs do not identify any concrete injury or harm to either of them or to the performance of their computer or use of a website – much less one that is fairly traceable to the use of Defendant's Analytics Tool – these conjectural allegations are wholly insufficient to demonstrate standing. *See, e.g., Specific Media*, 2011 WL 1661532, at *5 ("If Plaintiffs are *suggesting that their computers' performance was compromised . . . they need to allege facts showing that is true.*") (emphasis added); *see also, DoubleClick,* 154 F.Supp.2d at 525 (noting failure to plead "any damage whatsoever to plaintiffs' computers, systems or data that could require economic remedy.").

**B.  Plaintiffs Have Failed To Plead Any Causal Connection Between Any Harm And Each Defendant's Conduct Or Role In That Harm.**

Even if Plaintiffs could plead facts showing injury in fact (and they have not), the SAC would still warrant dismissal for failure to plead any causal connection between any harm and each Defendant's conduct or role in that harm. *Lujan*, 504 U.S. at 560-61 (to establish Article III standing, plaintiffs must demonstrate that "the injury [is] fairly traceable to the challenged action of the defendant"); *see also, Cady*, 583 F.Supp.2d at 1105-07 (plaintiff must establish standing to sue as against each individual defendant). The SAC is utterly silent as to how, or whether, any specific Defendant caused identifiable harm to either named Plaintiff. Instead, Plaintiffs continue to allege causation in a conclusory and *en masse* fashion—asserting repeatedly that "Defendants' conduct caused harm" to "Plaintiffs" —but without once identifying the *specific role* of each Defendant in purportedly causing such "harm." *See, e.g.*, SAC at ¶64 ("Defendants' conduct in acquiring such information without authorization or consent has caused and causes economic loss to plaintiffs..."). These conclusory allegations pleaded fall well short of the requirements of Article III and require dismissal of the SAC.

1    **C.  Plaintiffs Fail To Allege Facts Sufficient To State A Claim Under Any Of The Six**

2    **Pleaded Theories.**

3         Even if the Court were to overlook Plaintiffs' failure to establish Article III standing,

4    the SAC still fails to state a claim under Rule 12(b)(6) because Plaintiffs are attempting to

5    assert claims under a series of inapplicable statutes and common-law theories that, *inter alia*,

6    prohibit intentional, destructive acts of computer hacking and interception and that simply

7    cannot be construed to encompass the routine acquisition by website owners and operators of

8    information provided by visitors to their site, whether the device for doing so was detectable

9    by then current browser technology or not.  We address the theories in the order pleaded.

10

11   **1.  Plaintiffs fail to state a claim for Trespass To Personal Property / Chattels.**

12        "[T]he tort of trespass to chattels allows recovery for interferences with possession of

13   personal property 'not sufficiently important to be classed as conversion . . . .'" *Intel Corp. v.*

14   *Hamidi*, 30 Cal. 4th 1342, 1350 (2003).  "In order to prevail on a claim for trespass based on

15   accessing a computer system, the plaintiff must establish: (1) defendant intentionally and

16   without authorization interfered with plaintiff's possessory interest in the computer system;

17   and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc.*

18   *v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000) (citations omitted).

19        As discussed previously, however, plaintiffs have not alleged *any* injury resulting from

20   the alleged trespass or from the use of an Analytics Tool to organize information already

21   available to the websites that they visited.  The California Supreme Court has made clear that

22   the type of injury required to support a claim for trespass to a computer must consist of actual

23   impairment of use or deprivation of use for a substantial time – not a theoretical concern:

24            While one may have no *right* temporarily to use another's personal

25            property, such use is actionable as a trespass only if it "has proximately

26            caused injury." (*Thrifty-Tel, supra*, 46 Cal.App.4th at p. 1566.) "[I]n the

27            absence of any actual damage the action will not lie." (Prosser & Keeton,

28            Torts, *supra*, § 14, p. 87.) Short of dispossession, personal injury, or

1    physical damage (not present here), intermeddling is actionable only if

2    "the chattel is impaired as to its condition, quality, or value, or [P] . . .

3    the possessor is deprived of the use of the chattel for a substantial time."

4    (Rest.2d Torts, § 218, pars. (b), (c).) In particular, an actionable

5    deprivation of use "must be for a time so substantial that it is possible to

6    estimate the loss caused thereby. A mere momentary or theoretical

7    deprivation of use is not sufficient unless there is a dispossession . . . ."

8    (*Id.*, com. i, p. 423.)

9  *Intel Corp. v. Hamidi*, 30 Cal.4[th] at 1357.  In a suit for mass spamming, for example, a

10  commercial plaintiff sufficiently stated a claim by alleging that "mass mailings" from "non-

11  existent addresses" used by defendant placed a "tremendous burden" on plaintiff's using

12  "disk space and drain[ing] the processing power," and "making those resources unavailable to

13  serve subscribers." *CompuServe, Inc. v. Cyber Promotions, Inc.* 962 F.Supp 1015, 1021-

14  1023 (S.D. Ohio 1997); *see also, eBay v. Bidder's Edge, Inc.* 100 F.Supp.2d 1058 1071-1072

15  (N.D. Cal. 2000) (eBay's allegation that defendant engaged in robotic collection of data from

16  eBay's site and in so doing accessed eBay's website over 100,000 times per day).  Plaintiffs

17  here have no comparable facts to allege on which to base any claim for impairment of their

18  computers.  Because plaintiffs have not alleged the required injury resulting from the alleged

19  trespass they fail to state a claim under this theory. *See, Ashcroft v. Iqbal*, 129 S.Ct. 1937,

20  1949 (2009) ("naked assertion[s]" devoid of "further factual enhancement" are insufficient to

21  state a claim).

22

23  **2.  Plaintiffs fail to state a claim under California's Computer Crime Law (Cal. Penal**

24  **Code § 502).**

25    California's Computer Crime Law ("CCCL") (Cal. Penal Code § 502) is a criminal

26  statute enacted to prevent hacking – the knowing unauthorized access of computer systems

27  and theft or alteration of computer data. *See, People v, Gentry,* 234 Cal.App.3d 131, 141 n.8

28  (1991).  It allows a civil suit by a victim whose computer system is accessed "without

---

MOTION TO DISMISS

1  permission" (*i.e.,* broken into), but only where the action has caused the victim some

2  "damage or loss."  Cal. Penal Code § 502(e); *see also* Cal. Pen. Code. § 502(c) and (b)(10).

3      Plaintiffs here fail to state a claim under this statute in three ways.

4      First, the conduct complained of – the use of an Analytics Tool to aggregate and

5  analyze activities relating to visitors voluntary use of online websites – is far beyond the

6  intended scope of the statute, which is meant to proscribe hacking and other affirmative

7  actions against targeted systems.  *See, e.g., Chrisman v. City of Los Angeles,* 155 Cal. App.

8  4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of hacking or breaking into

9  a computer.")

10     Second, the applicable provisions of the statute all require that the alleged violator act

11  "without permission," which Defendants did not do.  *See,* Cal. Penal Code § 502(c)(1)-(8) &

12  (b)(10).  Despite Plaintiffs generic claims that they did not "consent" to the use of

13  KISSmetrics' Analytics Tool on websites that they visited, they utterly fail to point to a single

14  website's Privacy Policy or Terms of Service – or to support the claim that these websites

15  were prohibited from using standard web analytics tools to understand the activities on their

16  site.   Under Plaintiffs' tortured theory of consent, the downloading of every cookie, even the

17  HTTP cookies that plaintiffs apparently deem acceptable (but which also are deposited on

18  their computers), would potentially be a crime by the site owner, depending on any particular

19  visitor's privacy settings and view of such things.  Where the facts alleged fail to show some

20  affirmative access taken without permission, the claim fails as a matter of law and should be

21  dismissed.  *Swearingen v. Haas Automation, Inc.,* 2009 U.S. Dist. LEXIS 106754 at *11

22  (S.D. Cal. 2009).

23     Third, as discussed in connection with Article III standing, they have failed to allege

24  any damage or loss.  *Specific Media,* 2011 WL 1661532 at *6 (granting motion to dismiss

25  claim under Cal. Penal Code § 502 given failure to allege damage sufficient for Art. III

26  purposes).

27

28

**3. Plaintiffs state no claim under the federal Computer Fraud and Abuse Act (18 U.S.C. § 2710).**

Initially enacted in 1984, the federal Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030) is an anti-hacking statute that, in similar fashion to California's Computer Crime Law discussed above, criminalizes different kinds of computer hacking, such as "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] – …information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Plaintiffs fail to state a claim under the federal statute for essentially the same reasons they fail to state a claim under the state statute.

First, the federal statute, like the state statute, was never intended to criminalize commercial Internet protocols such as cookies (browser cookies or otherwise). Rather the CFAA was intended to combat destructive computer hacking, something Plaintiffs do nor and could not allege here. The court in *DoubleClick* rejected an identical claim under the CFAA for that reason, as a matter of law, and noted "[t]he absence of evidence in the legislative or judicial history of … [the CFAA] to suggest that Congress intended to prohibit conduct like DoubleClick's …." *In re DoubleClickpra,* 154 F.Supp.2d at 526. "To the contrary," that court observed, "the history of [this] statute[] reveal[s] [a] specific Congressional goal[] – punishing destructive hacking … -- that [is] carefully embodied in [this] criminal statute[] and its corresponding civil right[] of action. *Id.; see also, LVRC Holdings v. Brekka,* 581 F.3d 1127, 1130 (9th Cir. 2009) ("The [CFAA] was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality[.]"); *Shamrock Foods Co. v. Gast,* 535 F.Supp.2d 962, 965-66 (D. Ariz. 2008) ("[T]he legislative history supports a narrow view of the CFAA…. The general purpose of the CFAA 'was to create a cause of action against computer hackers (e.g. electronic trespassers).'… Thus, the conduct prohibited is analogous to that of 'breaking and entering' rather than using a computer … in committing the offense …. Simply stated, the CFAA is a criminal statute focused on criminal conduct. The civil component is an afterthought." ) (internal citations omitted); *U.S. v. Aleynikov,* 2010 U.S. Dist. LEXIS 92101 at *56 (S.D.N.Y Sept. 3, 2010);

1   *Orbit One Communs. V. Numerex Corp.,* 692 F.Supp.2d 373, 385-86 (S.D.N.Y. 2010); *Jet*

2   *One Group, Inc. v. Halcyon Jet Holdings, Inc.* 2009 U.S. Dist. LEXIS 72579, at *19-21

3   (E.D.N.Y. Aug. 4, 2009).

4        Second, even if Congress had intended to cast a wide enough net in the CFAA to

5   criminalize the use of undetected cookies – and it did not – the SAC fails to plausibly allege

6   that Plaintiffs suffered "damage or loss by reason of a violation of this section" *and* that they

7   suffered at least $5,000 in economic damages in a one-year period as a result of defendants'

8   actions – threshold requirements to state a claim under the CFAA. *See,* U.S.C. §§ 1030(g) &

9   (c)(4)(A)(i)(I).  Specifically, Plaintiffs here do not plausibly allege (or allege at all) that

10  Kissmetrics' code caused "any impairment to the integrity or availability of data, a program, a

11  system, or information," nor do they plausibly allege that the code resulted in and "cost to any

12  victim" who downloaded it.  18 U.S.C. §§ 1030(e)(8) & (11) (defining "damage" and "loss").

13       Additionally, even if the court were to conclude that Plaintiffs had suffered some *de*

14  *minimis* "damage" or "loss," Plaintiffs have failed to plausibly allege how they have suffered

15  the requisite $5,000 in economic loss in a one-year period.  "Economic loss" in this context,

16  refers to "property …impaired in value, or money or property lost, or money [that] must be

17  spent to restore or maintain some aspect of a business affected by a violation." *Creative*

18  *Computing v. Getloaded.com,* 386 F.3d 930, 935 (9th Cir. 2004).  It is settled that the use of

19  cookies – browser cookies or otherwise – to track a visitor's activities does not rise to the

20  level of economic damages. *DoubleClick,* 154 F.Supp.2d at 525-526 (holding that even "in

21  the event that some value could be placed on these losses … plaintiffs have failed to allege

22  facts that could support the inference that damages and losses plaintiffs incurred from

23  DoubleClick's access to any particular computer, over one year's time, could meet [the

24  $5,000] damage threshold"); *La Court v. Specific Media, Inc.*, 2011 WL 1661532, at *4; *In re*

25  *Intuit Privacy Litig.,* 138 F.Supp.2d 1272, 1281 (C.D. Cal. 2001) (granting defendant's

26  motion to dismiss CFAA claim based on installation of cookies because the Complaint did

27  "not include sufficient facts constituting an allegation or reasonable inference therefrom that

28  Plaintiffs suffered at least $5,000 in damages"); *Czech v. Wall Street On Demand,* 674 F.

1  Supp.2d 1102, 1113-18 (D. Minn. 2009) (alleged taking of electronic information from

2  plaintiff's cell phone does not state claim for losses that can aggregate to meet $5,000

3  threshold).[2]

4

5  **4.  Plaintiffs fail to state a claim under California's Unfair Competition Law ("UCL")**

6  **(Cal. Bus. & Prof. Code § 17200).**

7      Plaintiffs fail to state a claim under California's UCL in several ways.  First, they do

8  not allege facts showing they have standing under that statute.  A private person has standing

9  to bring a UCL action only if he or she "has suffered injury in fact *and* has lost money or

10  property as a result of the unfair competition.  Cal. Bus. & Prof. Code § 17204 (emphasis

11  added).  *See also, Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008).  As

12  discussed above, plaintiffs have not shown that they suffered any injury in fact, and they

13  certainly have not pointed to any loss of money or property.  Accordingly they lack standing

14  to pursue their UCL claim.  *See, e.g., In re Tobacco II Cases,* 46 Cal.4th 298, 319-20 (2009).

15      Second, plaintiffs have not and cannot plausibly allege that KissMetrics or any

16  Website Defendant has engaged in any "unlawful" business practice.  *See Berryman v. Merit*

17  *Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007) ("violation of another law is a

18  predicate for stating a cause of action under the UCL's unlawful prong."); *Whiteside v. Tenet*

19  *Healthcare Corp.*, 101 Cal.App.4th 693, 706 (2001) (same).  Absent violation of some such

20  other statute, the UCL claim also fails.  *See, e.g. Sybersound Records Inc. v. UAV Corp.,* 517

21  F.3d 1137, 1152-53 (9th Cir. 2008) (affirming dismissal of UCL claim because alleged

22  conduct was not independently unlawful); William L. Stearn, *Bus. & Prof. Code § 17200*

23  *Practice* (The Rutter Group 2010) ¶ 5:141 (where a plaintiff cannot "state a violation of an

24  underlying law, the § 17200 [unlawfulness] claim on which it is premised fails too").

25      Plaintiffs allege that defendants' conduct was "unlawful" insofar as it violated Cal

26  Penal Code § 502 and / or the CFAA, 18 U.S.C. § 1030 (SAC ¶ 148), but as shown above,

27

28  [2] To the extent Plaintiffs attempt to rely on subsection (a)(5)(A), they have failed to allege that defendants intentionally caus[ed] damage" to their computers."

1    plaintiffs have failed to state a claim under either anti-hacking statute.  Plaintiffs also allege

2    as a predicate violation the invasion of privacy under California's Constitution (SAC ¶ 146),

3    but as shown below, they have stated no claim under that provision either.

4          For good measure, plaintiffs also allege as a predicate violation false advertising by

5    defendants in violation of Cal. Bus. & Prof. Code § 17500, despite not having alleged any

6    claim under (or elsewhere mentioning) that section.  Moreover, the allegation of a violation

7    here is pure conclusion, as plaintiffs allege that Defendants made unidentified "untrue and

8    misleading statements relating to Defendants' performance of services and with the intent to

9    induce consumers to enter into obligations relating to such services."  SAC ¶ 147.  No actual

10   statements to any such effect by any Defendant are alleged at all, let alone alleged with any

11   specificity.

12         Moreover, the allegations of misleading statements with intent to induce reliance

13   sound in fraud, and as a result are subject to a heightened pleading standard under Rule 9(b).

14   The Ninth Circuit has repeatedly has held that Rule 9(b) applies to all averments of fraud,

15   regardless of whether fraud is an essential element in the underlying cause of action.  *Vess v.*

16   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cr. 2003); *Kearns v. Ford Motor Co.,*

17   567 F.3d 1120, 1125 (9th Cir. 2009) (applicable to UCL claim grounded in fraud).  None of

18   the elements of fraud here are alleged with any specificity, so the claim should be dismissed.

19   *See, e.g., McKinniss v. General Mills, Inc.* 2007 U.S. Dist. LEXIS 96107 at *5 (C.D. Cal.

20   Sept. 18, 2007) (granting motion to dismiss under Rule 9(b)).[3]

21         Next, plaintiffs attempt to state a claim under the unfairness prong of the UCL by

22   alleging that Defendants practices "cause harm" and "have no justification other than to

23   increase, beyond what Defendants would have otherwise realized, its *profits in fees from*

24   *advertisers*…" (SAC ¶ 147) (emphasis added)  Fees from advertisers?  KISSmetrics' product

---

[3] The same analysis applies to Plaintiffs' conclusory allegation that Defendants acts were fraudulent
    within the fraud prong of the UCL because they were somehow "likely to mislead members of the
    public to whom they were directed."  SAC ¶ 151.  Again, no detail whatsoever is pleaded to
    support the conclusion.

1   and business model has nothing to do with fees from advertisers, and the SAC nowhere else

2   alleges that it does, or otherwise sheds light on this allegation.  This unexplained reference to

3   "fees from advertisers" suggests only that this added legal theory was taken from some other

4   data-privacy complaint, such as one against Specific Media Inc., which did obtain its fees

5   from advertisers.

6        The other allegations of "unfairness" are that plaintiffs generally suffered

7   "disadvantage regarding their interests in privacy," such that defendants" conduct "offends

8   public policy."  SAC ¶149.  Plaintiffs get no more specific than to allege Defendants

9   breached an "obligation to observe consumers' privacy expressed in their browser settings."

10  SAC ¶150. But no basis for such an obligation is alleged, and none can be imagined, given

11  that browsers and browser settings differ.   To suffice to support a UCL claim, the allegations

12  of unfairness must be "tethered to some legislatively declared policy or proof of some actual

13  or threatened impact on competition" in a defendant's industry.  *Cel-Tech Communications,*

14  *inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal 4th 163, 185-187 (1999).

15  Because Plaintiffs here have provided no details or facts indicating how any Defendants'

16  conduct here was unfair, -- other than the conclusory allegation s discussed above, their claim

17  under the UCL fairness prong should be dismissed for this reason as well.  *See, e.g., Merton*

18  *v. American Home Mortg. Servicing, Inc.,* 2009 U.S. Dist. LEXIS 99024, at *21 (C.D. Cal.

19  Oct. 13, 2009).

20

21  **5. Plaintiffs fail to state a claim under Cal. Const. Article 1 for invasion of privacy.**

22        California Constitution Article I, Section 1 provides that "[a]ll people are by nature

23  free and independent and have inalienable rights. Among these are enjoying and defending

24  life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining

25  safety, happiness, and privacy."  Based on this expansive language, Plaintiffs allege that

26  Defendants somehow have violated their state constitutional right to privacy.  But the

27  interpretive case law *definitively establishes exactly the opposite, i.e.,* that the claim fails as a

28  matter of law.  As made clear by the California Supreme Court, "[n]otwithstanding the broad

1    descriptions of the privacy right in the ballot arguments and legislative findings . . . the right

2    of privacy protects the individual's *reasonable* expectation of privacy against a *serious*

3    invasion." *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370 (2007)

4    (emphases in original).

5         To state a claim for a violation of the California constitutional right to privacy, a

6    private plaintiff must, as a threshold matter, satisfy three elements: "(1) a legally protected

7    privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct

8    by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic*

9    *Ass'n*, 7 Cal.4th 1, 39-40 (1994).  These threshold elements are used to "weed out claims that

10   involve so insignificant or *de minimis* an intrusion on a constitutionally protected privacy

11   interest as not even to require an explanation or justification by the defendant." *Loder v. City*

12   *of Glendale*, 14 Cal. 4th 846, 893 (1997).  Here, Plaintiffs can satisfy *none* of the threshold

13   elements, and their claim therefore should be dismissed. *See, e.g., Scott-Codiga v. Cnty. of*

14   *Monterey*, 2011 WL 4434812, at *7 (N.D. Cal. Sept. 23, 2011) (dismissing right to privacy

15   claim brought under the California Constitution where plaintiff failed to plead the threshold

16   elements with adequate specificity).

17        First, Plaintiffs have not pled the existence of a "legally protected privacy interest."

18   "An apt example [of such an interest] from *Hill* is an interest 'in precluding the dissemination

19   or misuse of *sensitive and confidential information* ('informational privacy').'" *Pioneer*

20   *Electronics*, 40 Cal. 4th at 370 (quoting *Hill*; emphasis added). Thus, a person's confidential

21   medical profile, private financial records, sexual orientation, and sexual activity may qualify.

22   *See, e.g., Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 712 (9th Cir. 2005) (medical profile);

23   *Charles O. Bradley Trust v. Zenith Capital LLC*, 2006 WL 798991, at *1-2 (N.D. Cal. Mar.

24   24, 2006) (private financial records); *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal.

25   2007) (sexual orientation); *Botello v. Morgan Hill Unified Sch. Dist.*, 2009 WL 3918930, at

26   *5 (N.D. Cal. Nov. 18, 2009) (sexual activity).

27        In sharp contrast, the disclosure of "mere contact information," such as names and

28   addresses, does not "unduly interfere" with one's right to privacy. *Pioneer Electronics*, 40

Cal.4th at 372. Similarly, "[a] person's general location is not the type of core value, informational privacy explicated in *Hill*." *Fredenburg v. City of Fremont*, 119 Cal.App.4th 408, 423 (2004). Even in the context of private *medical* information (not implicated in the present case at all), courts have held that "Plaintiffs and the Class have no legally protected privacy interest in de-identified information as this de-identified information cannot be linked to individuals." *London v. New Albertson's, Inc.*, 2008 WL 4492642, at \*8 (S.D. Cal. Sept. 30, 2008) (dismissing California Const. Art. I., Sec. 1 claim). Plaintiffs allege much less – indeed, they fail to point to a single piece of information they claim was "tracked" -- and do not come close to alleging information that gives rise to a "legally protected privacy interest."

Second, despite their conclusory allegations to the contrary, Plaintiffs have not established "a reasonable expectation of privacy in the circumstances." Just the opposite. A visitor makes a voluntary choice to download any website and to engage in some activity on that site. That the owner or operator of that site might use tools to record and compile the activities of that visitor cannot be outside the range of reasonable expectation. Under such circumstances, Plaintiffs had no reasonable expectation of privacy as a matter of law. *See, e.g., Hill*, 7 Cal 4th at 36 ("A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms," and in determining whether an "objective entitlement" is present, "[c]ustoms, practices, and [the] physical settings surrounding particular activities" are taken into consideration, as is "the presence or absence of opportunities to *consent voluntarily* to activities impacting privacy interests.") (emphasis added); *Berry v. Webloyalty.com, Inc.*, 2011 WL 1375665, at \*10 (S.D. Cal. Apr. 11, 2011) (dismissing invasion of privacy claims because plaintiff had no "reasonable expectation of privacy . . . where Plaintiff consented to have his billing information shared by MovieTickets.com with Webloyalty," by voluntarily enrolling on MovieTickets.com).

Finally, as is obvious from the face of the SAC, Plaintiffs have failed to plead "a *serious* invasion of privacy." *Hill*, 7 Cal. 4th at 40 (emphasis added). Even if Plaintiffs could establish a *de minimis* invasion of privacy—and they cannot—they have not alleged, as they must, an invasion "sufficiently serious" as to constitute "an *egregious* breach of the social

norms underlying the privacy right." *See, id.,* at 37 (emphasis added). At most, Plaintiffs have alleged the use of routine data collection for analytics purposes, which clearly cannot suffice. *Compare* SAC ¶¶ 52-68 *with Hill*, 7 Cal. 4th at 40-41 (direct observation of urination by a monitor sufficiently egregious invasion); *Egan v. Schmock*, 93 F.Supp.2d 1090 (N.D. Cal. 2000) (stalking and filming of neighbors in their home sufficiently egregious invasion). The commercial use of information collected from consumers, even "without [consumers'] knowledge or permission," "is not an egregious breach of social norms, but *routine commercial behavior.*" *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (emphasis added) (affirming dismissal of cause of action under Article I, Section 1 of the California Constitution). The same is true here. The invasion-of-privacy claim should be dismissed with prejudice.

### 6. Plaintiffs fail to state a claim for Negligence.

The elements of a cause of action for negligence are "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Ladd v. Cnty. Of San Mateo*, 12 Cal.4th 913, 917 (1996) (quoting *Evan F. v. Hughson United Methodist Church*, 8 Cal.App.4th 828, 834 (1992) (italics in original).)

Plaintiffs allege the conclusion that defendants "owed a duty to Plaintiffs … to protect their personal information and data property and take reasonable steps to protect them from the wrongful taking of such information and the wrongful invasion of their privacy" (SAC ¶ 164), but even as alleged, the duty makes no sense. Read literally plaintiffs are alleging a duty on the part of defendants to protect Plaintiffs "from the wrongful taking" of their information – presumably by third parties or perhaps by each other – as opposed to any duty not to take the information themselves. But let's assume Plaintiff's pleaded a simpler duty on the part of defendants not to take or disseminate such information. There are still no facts pleaded to support a duty on the part of one party to a transaction not to record information provided by the other party to that transaction.

1    In addition, for the reasons addressed in detail above, Plaintiffs also fail to allege an

2    "appreciable, non-speculative, present injury," which is "an essential element of a tort cause

3    of action." *Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000) (*superseded by statute on other*

4    *grounds as stated in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1079-80 (2003));

5    *see also Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1661-62 (1994) (actual damage in "the

6    sense of 'harm' is necessary to a cause of action in negligence; nominal damages are not

7    awarded").  Plaintiffs' threadbare claim that they somehow were harmed as a result of

8    defendants' breach of duties does not suffice to allege a plausible, non-speculative injury.

9    Because Plaintiffs fail to allege the breach of any legal duty or any resulting injury, the SAC

10   complaint fails to state a claim for negligence.

11

12   **V.  CONCLUSION**

13   This is a lawsuit in search of an injury.  The courts have consistently rejected the

14   argument that the online collection of commercial data constitutes an actionable loss to the

15   subject, and Plaintiffs have not been able to allege any facts showing any actual damage to, or

16   even some measurable impact upon, their computers.  The conclusion is thus inescapable that

17   here too, the conduct of which Plaintiffs complain simply does not give rise to actionable

18   damage.  Plaintiffs have already amended this complaint twice to avoid that conclusion, and

19   further amendments will not enable them to conjure up some cognizable injury from a

20   situation that simply does not give rise to it.  The Second Amended Complaint should

21   accordingly be dismissed with prejudice.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

2

3                              Respectfully submitted,

4

5                              NIELSEN HALEY & ABBOTT LLP

6

7      Dated: May 18, 2012           By: _____
                                         Stephen W. Cusick

8                                    Attorneys for Defendant Space Pencil Inc.,
                                     d/b/a KISSmetrics
9

10

11

12                                   S. Ashlie Beringer SBN 263977
                                     Joshua A. Jessen, SBN 222831
13                                   GIBSON, DUNN & CRUTCHER LLP
                                     1881 Page Mill Road
14                                   Palo Alto CA 94304-1211
                                     Phone: (650) 849-5300
15                                   Fax: (650) 849-5333

16                                   Co-Counsel for Space Pencil Inc.
                                     d/b/a KISSmetrics
17

18

19

20

21

22

23

24

25

26

27

28