UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| JOHN B. KIM, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>SPACE PENCIL, INC., D/B/A<br>KISSMETRICS, et al.,<br><br>　　　　　　　　Defendants.<br>_____/ | No. C 11-03796 LB<br><br>ORDER CERTIFYING CLASS,<br>APPROVING CLASS ACTION<br>SETTLEMENT, AWARD OF<br>ATTORNEYS' FEES, AND INCENTIVE<br>AWARDS FOR THE NAMED<br>PLAINTIFFS<br><br>[ECF NOS. 97 & 98] |

**I. INTRODUCTION**

Plaintiffs and Defendant Space Pencil, Inc., d/b/a KISSmetrics ("KISSmetrics") agreed to settle this putative class action lawsuit in which Plaintiffs alleged that Kissmetrics: (1) surreptitiously tracked Plaintiffs' and Class Members' web browsing activities by misusing web technologies and circumventing browser settings put in place by Plaintiffs and Class Members; and (2) violated Plaintiffs' reasonable expectations that merely visiting websites would not expose them to KISSmetrics' code that repurposed the software on Plaintiffs' computers, circumvented their browser settings and protections, collected information about their web activities, and transmitted that information to KISSmetrics. *See* Second Amended Complaint ("SAC"), ECF No. 81.[1]
Plaintiffs alleged claims against Defendants for trespass to chattels, negligence, and violations of the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

Computer Crime Law (Cal. Penal Code § 502), the Computer Fraud and Abuse Act (18 U.S.C. § 2710), California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), and the right to privacy under Article I, § 1 of the California Constitution. SAC, ECF No. 81, ¶¶ 99-169.

Plaintiffs move to certify the settlement class and to approve the proposed settlement and for an award of attorneys' fees and incentive awards for the named plaintiffs. Kissmetrics filed a statement of non-opposition. The court held a hearing on November 15, 2012, ordered supplemental briefing, and now grants the unopposed motions.

## II. STATEMENT

Plaintiffs sued KISSmetrics and other websites that used the Kissmetrics code, alleging that they used surreptitious techniques to plant malicious code on their computers and track their activities on the internet. *See* Compl., ECF No. 1. Plaintiffs dismissed their claims against all Defendants except KISSmetrics. *See* ECF Nos. 84, 85.

The parties' settlement agreement is attached to the Kamber Declaration. Kamber Decl. Ex. 1, ECF No. 97-2 at 2. It has the following terms: (1) the named Plaintiffs agree to release all claims against KISSmetrics, *id.* at 9; (2) no release is provided by any Class Members except the named Plaintiffs, *id.*; (3) KISSmetrics agrees not to oppose named Plaintiffs' petition for $2,500 incentive awards,[2] *id.* at 10; (4) settlement class counsel shall be entitled to attorneys' fees and litigation expenses as awarded by the court, *id.* at 13; and (5) KISSmetrics agrees to the following injunctive relief:

> KISSmetrics represents that it does not now use, and agrees that it will not in the future use, the browser cache, DOM local storage (aka HTML5 storage), Adobe Flash LSOs, or eTags (collectively "Covered Technologies") to "respawn" or repopulate HTTP cookies or as an alternative method to HTTP cookies for acquiring or storing information about a user's web browsing activity and history, without reasonable notice and choice. Notwithstanding the foregoing, KISSmetrics shall not be restricted from using the Covered Technologies for any purpose and in any manner that is generally accepted in the online services industry and in compliance with standards set forth by applicable industry organizations, provided that, in no event, shall Covered Technologies be used to circumvent user privacy and security controls and settings.

*Id.*

---

[2] The agreement provides that the settlement agreement is binding still if the court declines to award an incentive award.

# III. ANALYSIS

## A. Jurisdiction

This court has jurisdiction under 28 U.S.C. §§ 1331, 1332(d)(2), and 1367.

## B. Class Certification

For settlement purposes only, the parties propose certification of the following class:

> All individuals and entities in the United States who visited a website and were assigned KISSmetrics identifiers that were created using such individuals' or entities' Adobe Flash software, browser HTML5 storage, or browser cache functionality from March 4, 2011 through July 28, 2011, inclusive. Excluded from membership in the Class are the following: (a) Defendant, the Released Parties (as defined in the Settlement Agreement), and their employees, their employees' immediate family members, and agents; and (b) any judge to whom the Action is assigned and the judge's immediate family members.

Kamber Decl. Ex. 1, ECF No. 97-2 at 7.

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). In a settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial. *See Staton v. Boeing*, 327 F.3d 938, 952-53 (9th Cir. 2003) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The court finds that the proposed settlement class here meets the requirements of Federal Rule of Civil Procedure 23(a) and (b).

### 1. Rule 23(a)

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. *See* Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

The factors here support class certification.

First, Plaintiffs estimate (and Defendants do not dispute) that the class members number in the millions. Supplemental Parisi Decl. ¶ 3. Plaintiffs are not required to state the exact number of potential class members. *See Celano v. Marriott Intern., Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal.

2007) (generally the requirement is satisfied when the class comprises 40 or more members). These numbers make joinder impracticable. *See Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, *County of L.A. v. Jordan*, 459 U.S. 810 (1982).

Second, as to the commonality requirement, while Rule 23(b)(3) requires that common issues must predominate for class certification, no such requirement exists under Rule 23(b)(2). *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998). "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Id.*

The proposed settlement class here presents numerous common issues. All class members share the common issue of having had their web browsing activities surreptitiously tracked by KISSmetrics' web technologies, including through exploits of Adobe Flash software, browser HTML5 storage, eTags, and browser cache functionality. These common issues among class members results in common factual and legal questions such as: (1) whether KISSmetrics, without authorization, created and/or manipulated Adobe Flash Player local stored objects, browser HTML 5 storage areas, eTags and browser cache on computers to which class members' enjoyed rights of possession superior to those of KISSmetrics; (2) for what purposes KISSmetrics created and/or manipulated these objects and code; and (3) whether KISSmetrics is liable for claims based on (i) trespass to personal property/chattel, (ii) California's Computer Crime Law (Cal. Penal Code § 502), (iii) the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030), (iv) California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), (v) California's Right to Privacy under California's Constitution, Art. I., § 1, and (vi) negligence.

Third, Plaintiffs' claims are typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3). The test is "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2009 WL 4263524, at *4 (N.D. Cal. Nov. 25, 2009) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The plaintiffs and class members visited websites during the class period that utilized KISSmetrics' web technologies and all were harmed in a nearly identical matter by

KISSmetrics' alleged practice of using web technologies to circumvent users' blocking or deleting of browser cookies and failure to provide adequate notice or choice about the use of these web technologies. Suppl. Parisi Decl. ¶ 4.

Fourth, the parties agree, and the court finds, that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The factors relevant to a determination of adequacy are as follows: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The factors exist here. Plaintiffs have the same interests as the proposed class members (in that all have been allegedly harmed by Defendants' alleged misuse of certain web technologies), and they have no interests antagonistic to the interests of the proposed class. Suppl. Parisi Decl. ¶¶ 6-9. Plaintiffs actively monitored the litigation and consulted with counsel during the course of lawsuit and settlement. Kamber Decl. ¶ 27, ECF. No. 97-1, and Suppl. Parisi Decl. ¶ 6. Furthermore, class counsel have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. *See* Kamber Decl., ECF No. 97-1; Strange Decl., ECF No. 97-6; Parisi Decl., ECF No. 97-7. Plaintiffs and their counsel have represented and will continue to represent the class adequately. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co*., 982 F.2d 386, 390 (9th Cir. 1992).

**2. Rule 23(b)(2)**

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022. The court finds that certification is appropriate under Rule 23(b)(2).

Certification under Rule 23(b)(2) is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here KISSmetrics has allegedly exploited flaws in several related internet browsing technologies to track

individual class members' web browsing activities. First Amended Complaint, ECF No. 31. This practice was applied generally to the class, and so the proposed final injunctive relief is appropriate respecting the class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

### 3. Conclusion: Certification is Appropriate

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), the court certifies the class members set forth above solely for the purpose of entering a settlement in this matter.

### 4. Notice of Class Certification

In certifying a class under Rule 23(b)(2), the court "may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). As the rule indicates, whether to direct notice is a decision within the court's discretion. *See Equal Employment Opportunity Comm'n v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 334 (9th Cir. 1979) *aff'd sub nom. Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318 (1980). The court exercises its discretion and does not direct notice here because the settlement does not alter the unnamed class members' legal rights.

## C. Appointment of Class Representative and Class Counsel

For the reasons set forth in the previous section, the court appoints John B. Kim and Dan C. Schutzman to serve as the class representatives. The court finds specifically that they allege claims that are typical of the claims of class members generally and are adequate representatives of the other members of the proposed class.

The court also finds that the firms of Strange & Carpenter, Parisi & Havens, and KamberLaw LLP collectively have sufficient experience and expertise in prosecuting class action cases and appoints these firms as class counsel for settlement purposes only.

## D. Approval of Settlement Agreement

### 1. A Fairness Hearing is Not Required

Because the proposed settlement binds only the named plaintiffs, the court need not conduct a fairness hearing. Federal Rule of Civil Procedure 23(e)(2) provides that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Here, the proposal would not bind class members, so the fairness inquiry is not required. Nonetheless, the parties contend that their proposed settlement is sufficiently fair,

reasonable, and adequate to meet the Rule 23(e)(2) requirements.

**2. The Settlement Agreement**

In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with the Plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that settlement is fair, adequate, and reasonable for numerous reasons. First, Plaintiffs recognize that there is some legal uncertainty in this litigation and that Defendant filed a motion to dismiss Plaintiffs' Second Amended Complaint. *See* Motion for Approval, ECF No. 97 at 13. The court agrees that under the circumstances of the litigation, the Settlement Agreement is reasonable. *See, e.g.*, *La Court v. Specific Media*, 2011 WL 1661532 (C.D. Cal. April 28, 2011). Accordingly, this factor favors settlement.

The second factor considers "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *In re OmniVision*, 559 F. Supp. 2d at 1041 (citing *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)). "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

Here, absent settlement, even if Plaintiffs prevailed in obtaining class certification, the expense, duration, and complexity of the protracted litigation that would result from the claims and defenses alleged in this litigation would be substantial. Given the complexity and novelty of the issues, an

1  appeal is also an issue. The substantial and immediate relief provided to the Class under the
2  Settlement weighs heavily in favor of its approval compared to the inherent risk of continued
3  litigation, trial, and appeal, as well as the financial wherewithal of the defendant.

4  The third factor considers the risk of maintaining class action status. Defendant has indicated it
5  would vigorously oppose class certification absent the Settlement. Still, based on the record
6  presented, the court considers the risk of decertifying the class to be low. This factor, therefore,
7  weighs slightly against approving the Settlement Agreement.

8  The fourth factor – the amount offered in the settlement – also favors approval. While this
9  settlement does not include monetary relief for the class, it stops the allegedly unlawful practices,
10 bars Defendant from similar practices in the future, and does not prevent the class members from
11 seeking legal recourse.

12 Fifth, the Court considers the extent of the discovery to date and the stage of the litigation as
13 indicators of Class Counsel's familiarity with the case and ability to make informed decisions. *In re*
14 *OmniVision*, 559 F. Supp. 2d at 1042 (citing *Dunleavy*, 213 F.3d at 459). Plaintiffs claim that they
15 have retained experts on the Internet privacy issues, have engaged in significant forensic
16 investigation of the claims, obtained information from a large number of initial co-defendants that
17 did business with KISSmetrics, and evaluated the financial condition of Defendant. *See, e.g.*, Suppl.
18 Parisi Decl., ECF No. 106-1 at 2. Because Plaintiffs have a good idea of the value of their claims,
19 this factor also favors approval of the Settlement Agreement.

20 The sixth factor has the Court consider Class Counsel's experience and views about the
21 adequacy of the Settlement. *See In re OmniVision*, 559 F. Supp. 2d at 1043. In fact, "[t]he
22 recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Id.*
23 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Reliance on such
24 recommendations is premised on the fact that "parties represented by competent counsel are better
25 positioned than courts to produce a settlement that fairly reflects each party's expected outcome in
26 the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As their
27 declarations indicate, Class Counsel, and other members of KamberLaw, LLC, Parisi and Havens
28 LLP, and Strange & Carpenter who were actively involved in the litigation of this matter, have

engaged regularly in major complex litigation and have extensive experience in prosecuting consumer class action lawsuits of similar size and complexity. Through their investigation, review of discovery materials, litigation, mediation, and settlement, Class Counsel have an intimate understanding of the instant litigation and believe the settlement to more than exceed the standard required for the Court's approval. This factor also favors the Court's approval of the Settlement Agreement.

There is no government participant here, so the court does not weigh the seventh factor. The final factor, the reaction of class members is not relevant here because notice not required under Federal Rule of Civil Procedure 23(e) and there is no binding effect on the Class nor is there a release being provided.

In addition, the settlement was the result of the Settling Parties arm's length negotiations in good faith over many months, including mediation before Supreme Court of California Justice Edward A. Panelli (Ret.) of JAMS, which resulted in the proposed Settlement reflected in the Agreement and was not the product of collusion. Counsel for the Parties are highly experienced in this type of litigation, with full knowledge of the risks inherent in this action, and they are in a position to enable the Parties to make an informed decision as to the fairness and adequacy of the Settlement.

In sum, the court finds that viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted even under the higher standard of Federal Rule of Civil Procedure 23(e)(2). *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement.

**3. Notice of Settlement to Class**

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Class notice is not required because only the named Plaintiffs are executing a release and no class members will be bound by this settlement.

### E. Attorneys' Fees, Costs, and Named Plaintiff's Incentive Award

#### 1. Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Attorneys' fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Staton*, 327 F.3d at 963-64. The court is not bound by the parties' settlement agreement as to the amount of attorneys' fees. *In re Bluetooth*, 654 F.3d at 943.

The lodestar analysis is the appropriate method to determine fees in this case. The Ninth Circuit has held that when state substantive law applies, attorneys' fees are to be awarded in accordance with state law. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In a class action governed by California law where "the responsibility to pay attorneys' fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of reasonable attorneys' fees is the lodestar method." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Similarly, under Federal law, "in injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon*, 150 F.3d at 1029.

Here, Plaintiffs brought one federal claim and five claims under state statutory and common law. *See* Second Amended Complaint, ECF No. 81 at 16-26. Because the settlement resulted in injunctive relief, the lodestar method is the appropriate measure under state or federal law.

Under the lodestar method, the lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *Hanlon.*, 150 F.3d at 1029. The lodestar may include a risk multiplier to enhance the fees under certain circumstances, in which a court considers "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.*, 150 F.3d at 1026. The customary range for multipliers is between 1.0 and 4.0. *See Vizcaino*, 290 F.3d at 1051 n. 6 (describing appendix to opinion, finding a range of multipliers in common fund cases "of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0

1 range").

2 According to the figures provided in the attorney declarations, Plaintiffs' counsel seek a lodestar
3 amount of $403,025.50. *See* Mot., ECF No. 98 at 7-8. The court summarizes the hourly rates,
4 number of hours claimed, and total fee request in the following table[3]:

| Name | Rate | Hours | Lodestar Amount |
|---|---|---|---|
| Scott A. Kamber | $580.00 | 170 | $98,600.00 |
| David Stampley | $520.00 | 163 | $84,760.00 |
| Dana Rubin | $430.00 | 45 | $19,350.00 |
| Grace Tersigni | $375.00 | 50 | $18,750.00 |
| Avi Kreitenberg | $350.00 | 18 | $6,300.00 |
| Brian R. Strange* | $797.00 | 77 | $56,617.00 |
| Gretchen Carpenter* | $725.00 | 12.25 | $8,243.75 |
| Carolyn Deverich | $375.00 | 60.5 | $22,687.50 |
| David Holop* | $375.00 | 41.5 | $16,212.50 |
| Jill Hood | $280.00 | 32.75 | $9,170.00 |
| Carlo Aguilar | $235.00 | 0.25 | $58.75 |
| David C. Parisi | $510.00 | 99.8 | $50,898.00 |
| Suzanne Havens Beckman* | $495.00 | 4.7 | $2,303.00 |
| Azita Moradmand | $250.00 | 36.3 | $9,075.00 |
| **Total** | | **811.1** | **$403,025.50** |

18 *See* Kamber Decl. ¶ 16; Strange Decl. ¶ 10; Parisi Decl. ¶ 4. Class counsel's affidavits also attest to
19 the reasonableness of their hourly rates and the qualifications of the attorneys. *See id.* Based upon
20 the declarations, the court finds the hourly rates to be reasonable. In addition, the modest number of
21 hours claimed indicates that class counsel worked efficiently and exercised billing judgment. The
22 court finds these hours to have been reasonably expended.

23 Counsel request that this order enhance the total fee award by applying a multiplier of 1.18,[4]

---

[3] For attorneys marked with an asterisk, Plaintiffs requested a lower lodestar amount than otherwise indicated by that attorney's current hourly rate. This table reflects the lower amount.

[4] Counsel calculate a multiplier of 1.17 by dividing the requested fee of $474,195.49 by the $403,025.50 lodestar amount. *See* Kamber Decl. ¶ 20 n.2. Using this method, the court calculates the multiplier as 1.176 and rounds up to 1.18.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  which this order finds warranted given "the quality of the representation, the benefit obtained for the
2  class, the complexity and novelty of the issues presented, and the risk of nonpayment" in this action.
3  *Hanlon,* 150 F.3d at 1029. The determinative factor, however, is the benefit to the class. Here, the
4  settlement prevents Defendant from engaging in the conduct that was the subject of the suit and does
5  not bind the class members. This unmitigated benefit to the class justifies the requested fee award
6  and multiplier. Class counsel's request for $474,195.49 in attorneys' fees is fair, reasonable, and
7  adequate and the court awards the requested attorneys' fees..

8  **2. Costs**

9  Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R.
10 Civ.P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may
11 recover reasonable expenses that would typically be billed to paying clients in non-contingency
12 matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving
13 reasonable costs in class action settlement). Class counsel seeks reimbursement of $35,804.51 in
14 litigation expenses. *See* Motion, ECF No. 98 at 9; Kamber Decl. ¶ 17 (seeking $32,808.00); Parisi
15 Decl. ¶ 5 (seeking $1,901.90); Strange Decl. ¶ 11 (seeking $1,094.61). Class counsel did not submit
16 detailed records supporting this request, but they itemized their costs in declarations. *See id.* Over
17 40% of the claimed costs ($15,000) is attributable to forensic experts used "to make explicit and
18 technical pleadings which Plaintiffs' counsel contend caused Defendant to resolve this action."
19 Mot., ECF No. 98 at 9-10; Kamber Decl. ¶ 17. Approximately 25% of the costs ($9,050.00) are for
20 mediator expenses.

21 The court finds that these costs are reasonable. Plaintiffs' complaint contains a detailed
22 technical explanation of the accused technologies and business methods, and it seems reasonable
23 that these descriptions contributed to the settlement value of Plaintiffs' claims. Presumably,
24 Defendant could independently verify the mediator expenses incurred, and Defendant has not
25 objected to Plaintiffs' costs. Similarly, the travel and document expenses appear reasonable.
26 Finally, counsel incurred additional out-of-pocket expenses for which they do not seek
27 reimbursement. *See* Strange Decl. ¶ 12. Based upon the declarations of counsel and the court's
28 independent assessment of the reasonableness of these costs, the court finds Plaintiffs' request

1 reasonable and awards the requested costs of $35,804.51.

### 3. Incentive Award for Named Plaintiffs

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Here, named Plaintiffs Kim and Schutzman request an incentive award of $2,500 each. Mot., ECF No. 98 at 11. Kim and Schutzman apparently learned of Defendant's practices and sought counsel to remedy what they perceived as a violation of their rights. *See* Mot., ECF No. 98 at 11. This ultimately resulted in injunctive relief intended to halt invasive business practices affecting at least tens of thousands of class members. While it is difficult to gauge the monetary value of this injunctive relief, the modest incentive awards requested seem appropriate given the number of individuals affected. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 award to each of four plaintiff representatives of 13,176 member class from $45 million settlement amount); *Van Vranken*, 901 F.Supp. at 299 (approving $50,000 award in $76,723,213.26 settlement amount). Accordingly, the court GRANTS Plaintiffs' request for an incentive award to the Kim and Schutzman of $2,500 each.

### IV. CONCLUSION

The court grants Plaintiffs' unopposed motion, certifies the class, approves the settlement, grants the attorneys' fees and costs requested, and grants the incentive award of $2,500 to each named

plaintiff. Plaintiffs are directed to file a notice of dismissal within 10 days of receiving the payments contemplated in the settlement agreement. The court sets a case management conference for March 7, 2013. The court will vacate the case management conference if requested in the notice of dismissal.

This disposes of ECF Nos. 97 & 98.

**IT IS SO ORDERED.**

Dated: November 28, 2012

_____
LAUREL BEELER
United States Magistrate Judge